[S. F. No. 1451.   Department Two.—January 14, 1901.]

J. H. LAVENSON, Respondent, v. J. H. WISE, Appellant.

ATTORNEY AND CLIENT—CONTRACT FOR CONTINGENT FEE—RESCISSION—
WAIVER OF OBJECTION—QUANTUM MERUIT.—An attorney who under-
takes the collection of a note for an agreed contingent fee, with
the understanding that the note will not be contested, may
promptly rescind the agreement, or refuse to proceed under
it, if the validity of the note is contested; but it is too late to
rescind it after the action upon the note is tried and lost, without
any prior notice of objection to the contingent fee, or any
change in the agreement. The attorney in such case cannot,
after final judgment rendered for the defendant sued upon the
note, recover anything for his services upon a *quantum meruit.*

ID.—ASSURANCES OF CLIENT AS TO FALSITY OF ANSWER.—The fact that
the client gave assurances to his attorney that he could over-
come an answer, pleading a want of consideration for the note,
and that judgment went against him notwithstanding, cannot
justify the attorney in maintaining an action upon a *quantum
meruit* where he proceeded with the case as though the contract
for the contingent fee was still in force.

ID.—EXECUTION OF CONTRACT—RECEIPT SIGNED BY ATTORNEY.—A receipt
for the note to be collected, setting forth the agreement for a
contingent fee to be paid only out of the proceeds of the col-
lection of the note, by suit or otherwise, signed by the attorney
and delivered to the client, is sufficient evidence of the agree-
ment to bind the attorney until modified, superseded, or re-
scinded. It was not necessary that the agreement should be
signed by the client; but his action under it is sufficient to
bind him.

PLEADING—VALID AND INVALID CAUSES OF ACTION—GENERAL VER-
DICT—NEW TRIAL.—Where the verdict is general and one of the
causes of action pleaded cannot be maintained, and it cannot
be determined what part of the verdict is referable to other
valid causes of action, a new trial must be granted.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order denying
a new trial.   George H. Bahrs, Judge.

The facts are stated in the opinion.

D. H. Whittemore, for Appellant.

Joseph Rothschild, for Respondent.

CXXXI. Cal.—24

CHIPMAN, C.—Action for services as attorney at law rendered defendant by Joseph Rothschild, Esq., plaintiff's assignor. Defendant denied the alleged indebtedness, and as a separate answer alleged that the firm of Christy & Wise, composed of John H. Wise (defendant) and Harry E. Wise, was the owner of a promissory note for nine thousand seven hundred and sixty dollars, made by one James Murphy and one E. Smalley; that said Rothschild represented to said firm that he could collect the money due on said note, whereupon it was agreed between Rothschild and Christy & Wise that said firm should pay said Rothschild fifty dollars, which was then paid, and "should, when the money due on said note was collected, and only out of the proceeds of the collection of said note, and not otherwise, further pay said Rothschild the sum of five hundred dollars, as fee in and for the collection of the money due on said note, by suit or otherwise"; that Rothschild commenced suit on said note, but failed to collect the same or any part thereof, and has abandoned all attempt to collect the said note; that said unsuccessful attempt to collect said note was the only service performed by said Rothschild for said firm or for defendant. The cause was tried by a jury and plaintiff had a verdict for one thousand dollars. The appeal is from the judgment and from the order denying motion for new trial.

The evidence of plaintiff tended to show that plaintiff's assignor performed services in relation to the collection of the note referred to in the answer, which were of the value of one thousand dollars; also services in relation to an accounting between Wise and Murphy and Smalley, or the "Yellowstone Saloon," as the place is called, the sale of one-half interest in which was the consideration for the note; also services in relation to the sale of certain goods by Wise to Wise and Murphy. Some evidence was given as to the amount of work done by Rothschild in relation to the accounting, and in the matter of the sale of goods by Wise to Murphy and Smalley. Mr. Rothschild testified that his services in each of the two latter matters were reasonably worth two hundred and fifty dollars, and this is undisputed by the evidence, as is also his estimate of the value of his services, to wit, one thousand dollars, for bringing the suit on the note.

The principal question in controversy arises in regard to the agreement to collect the note.   The testimony tended to show that when he undertook the business it was with the understanding that it was an ordinary case on promissory note, to which there was no valid defense, and that Mr. Rothschild was employed because he had information about Murphy's business and property, from which he was assured he could collect the judgment when obtained.   I think it fairly inferable from the evidence that when the agreement presently to be stated was entered into, Rothschild understood from what Wise told him, or led him to believe, that the case would not be litigated. With this understanding Rothschild signed and gave to Wise the following paper:

"San Francisco, Dec. 9th, 1895.

"Received of Mr. John H. Wise a note for nine thousand seven hundred and sixty ($9,760.00) dollars, dated April 15th, 1895, payable six months after date with interest thereon at the rate of 8 per cent per annum.   Said John H. Wise to pay upon demand the sum of fifty ($50.00) dollars for court costs and the sum of five hundred ($500.00) dollars as a fee upon collection of the same.

"(Signed)     JOSEPH ROTHSCHILD."

On December 14, 1895, Mr. Rothschild filed a complaint in the action on the note referred to in the receipt, and on January 11, 1896, the defendants in that action filed an answer.   The note was payable to D. H. Whittemore or order, indorsed to Christy & Wise by Whittemore, and by them indorsed to John H. Wise, who brought the action and is defendant here.

The answer admitted the execution of the note, but alleged that it was without consideration, and that Wise took it with full knowledge of that fact; that the consideration was a half interest in the Yellowstone Saloon, its fixtures and stock of merchandise, which Christy & Wise had agreed to sell and transfer to Murphy and Smalley, the makers of the note; that Christy & Wise neglected and refused to make the transfer of the saloon, and on November 8, 1895, Murphy and Smalley notified Christy & Wise that they had rescinded said contract of purchase and declined to pay said note; that it was agreed between Christy & Wise and Murphy and Smalley that the

note was to be paid from the income of the saloon, and not otherwise, of which Christy & Wise had full knowledge; that John H. and Harry E. Wise falsely represented to the makers of the note at the time of said purchase that the daily receipts of the saloon were one hundred dollars per day, whereas they were but thirty-five dollars per day, and that one McCallum, who they represented was an experienced saloon-keeper, had agreed to buy the other half of the saloon and could bring in much business, etc., all of which was alleged to be false; other false and fraudulent representations were set up in the answer, on account of which and the failure on the part of Christy & Wise to keep their contract Murphy and Smalley had, in November, 1895, rescinded and notified Christy & Wise that they would not pay said note.

The trial of that action commenced on December 10, 1896, and lasted several days, and on February 25, 1897, the court made its findings in favor of defendants in the action and judgment followed for defendants. The evidence is that Wise directed Rothschild to take an appeal to the supreme court, and the latter gave the usual notice and prepared the transcript, comprising three hundred and forty pages of typewritten matter. Wise paid the reporter for this work. Plaintiff testified: "I then made a demand on Mr. Wise for five hundred dollars in that matter and he declined to pay it, and I never received a cent." Rothschild's connection with the case then ceased, and what became of the appeal is not disclosed.

It appears without conflict that upon the filing of the answer to the suit on the promissory note Rothschild had knowledge of the nature of the defense set up; an assistant in his office devoted several days to looking up questions of law likely to arise under the issues presented by the answer; the case was not tried for nearly a year after issue of fact was joined. There is no question but that Rothschild knew, or had reason to know, that the defense set up to the note would defeat payment if it prevailed, and that in any event it meant litigation, which he had not contemplated when he entered into the agreement with Wise. He testified: "I had a conversation with Mr. J. H. Wise about it [the answer] and he told me it was not true. These things could be disproved—they could not prove

it." He testified that he received the note "on the terms set out in the receipt" and continued in the case until after the trial; that after the trial "I asked him [Wise] what he proposed to do about it, and he said he would take the case to the supreme court."

"Q. You had not said a word about changing this agreement? A. Not a word at all.

"Q. After you had received that transcript and put him to that expense, that was the first time you suggested that you would not go on with the case? A. I did nothing of the kind. I told him to pay the five hundred dollars.

"Q. Was that the first intimation that you gave that you were not going on? A. After the trial—I never bothered him during the trial because I did not have time.

"Q. You never bothered him during the year 1896? A. Not at all.

"Q. You never bothered him for a month after the trial, did you? A. Oh, I do not know the time. Some time after the trial I asked him for five hundred dollars and he declined to pay it.

"Q. That was the first time there was any change in the terms of the agreement? A. I do not know what you mean by 'change.' The first time I ever asked him for money was after the trial. I signed an agreement to do certain things. He never agreed to do anything.

"Q. Didn't you receive the note on these terms? A. I suppose so; yes.

"Q. Well, was not that the agreement? A. I do not know. I do not see how you can pin a man down to an agreement if he [Wise] did not sign it. I was willing to trust him. I did not ask him for any writing. I was willing to take it that way. The receipt merely recites the terms, and Mr. Wise had a doubt about the propriety of turning over a nine thousand dollar note, and I had to satisfy him that I was perfectly responsible."

At another part of his testimony he testified: "I went on because John H. Wise told me these allegations [referring to the answer] were not true—he could prove they were not true."

Again he testified: "Q. Now, Mr. Rothschild, did you inform Mr. Wise in any way that you would not go on with the case on these terms? A. No, sir.

"Q. You never told him that, did you? A. No, sir.

"Q. You went on through the year 1896? A. Yes.

"Q. Under this agreement? A. Yes.

"Q. You tried the case under this agreement? A. No, I did not.

"Q. Did you tell him that you would not continue under the agreement? A. No, sir.

"Q. Did you ask him for any other agreement? A. No, sir.

"Q. Did you ever speak to him on any occasion about another agreement? A. I could not do it, because I was in the middle of a trial. I never knew the true state of the facts."

Mr. Rothschild seems to have been of the impression that his receipt to Wise was not a contract because Wise did not sign it. This is an erroneous view of the receipt. It was an agreement on Mr. Rothschild's part to take the case on the terms proposed by him, and Wise became bound by it when he delivered the note to Rothschild under that agreement. It was not necessary for Wise to sign it. He acted under it and this was sufficient to bind him. The serious question is, Could Mr. Rothschild go forward under his contract and try the case after he knew it was to be seriously litigated, and might be defeated, without informing Mr. Wise that this new phase of the matter would involve labor not previously contemplated, and that he would require a larger contingent fee or would require some fee in the event of failure to obtain judgment? Upon the face of the agreement the fee was contingent; that agreement was not changed by Mr. Rothschild, nor attempted to be changed until after the trial and judgment had gone against his client. Mr. Rothschild did nothing and said nothing which would lead Mr. Wise to suppose that any change was to be made in the contract of employment.

It is true Wise told him the allegations of the answer were untrue and he could prove them to be so, and that the defendants in that action could not prove what they had alleged. Mr. Wise may have so thought and so believed, and whether he did

or not it was Mr. Rothschild's duty to inform him that the answer so changed the matter from its original aspect that a new agreement would have to be made as to his compensation. Saying nothing and doing nothing to indicate an unwillingness to continue as he had begun, Mr. Rothschild must be held to have continued under the only agreement then existing between the parties.

Upon this phase of the case there is no conflict in the evidence. By his own testimony we think Mr. Rothschild has shown that he ought not to have recovered for services in the case brought against Murphy and Smalley.

In the conversation which preceded the signing of the receipt there was nothing said about paying any fee in the event the suit was litigated; it was assumed by both parties that it would not be litigated. But there is nothing in the evidence which would warrant the assumption that Wise willfully or fraudulently deceived Rothschild in this regard; and if he did so, still, as soon as the fact came to Rothschild's knowledge (as it did when he was served with the answer), he should have promptly rescinded or demanded some different arrangement. He could not proceed with the case as though the contract was still in force, with a mental reservation that he would repudiate it or rescind it after the trial should his client be cast in the suit. To justify such a course would be to allow fraud to be met by fraud, and this the law will not allow.

Respondent contends with much confidence that he should recover in this action because recovery on the note was prevented by Wise. The facts on which this claim rests were all brought to Mr. Rothschild's attention in the answer of Murphy and Smalley to Wise's suit against them and in the course of the preparation for trial. Even though Wise gave him every assurance that he could overcome this defense, it did not change the fact that the contract of employment still bound Mr. Rothschild and continued to do so until modified, superseded by another, or rescinded. Mr. Rothschild had good cause for rescinding the contract or for refusing to proceed under it, but it was too late to rescind after it had been performed.

Under the facts in the case as they now appear, we are unable to discover any ground upon which the present action on

*quantum meruit* can rest as to the matter of the suit against Murphy and Smalley.

The verdict was general, and we cannot, therefore, determine what part of the one thousand dollars awarded plaintiff was for services other than those in the matter last above mentioned.

The cause should be remanded for a new trial, and we advise that the judgment and order be reversed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded for a new trial.

McFarland, J., Henshaw, J., Temple, J.