[Civ. No. 9803. First Appellate District, Division One.—June 24, 1936.]

M. L. LEE, Respondent, v. ABRAHAM L. GUMP, Appellant.

Charles A. Christin, Rowland R. King and Thomas J. Keegan for Appellant.

M. Mitchell Bourquin for Respondent.

KNIGHT, J.—This is an action on an assigned claim for attorneys' fees. The amount sued for was $2,350, and the trial court, sitting without a jury, found the services to be of the reasonable value of $1250, and gave judgment for that amount, from which judgment the defendant has appealed.

There is no controversy as to the legal services being rendered nor as to the reasonableness of the amount allowed therefor, but as will hereinafter appear, said services were performed in connection with the settlement of the marital difficulties of appellant's son and at the trial appellant claimed that any promise made by him to pay for such services amounted to no more than a collateral undertaking which admittedly was not in writing; and in any event that if any direct promise were made by him to pay therefor it was unsupported by a valid consideration for the reason, so he claimed, that respondent's assignors were already obligated under a prior engagement made by them with his son to render the services for the value of which he, the appellant, is now being sued.

The trial court found specifically against appellant on the foregoing defenses, and as ground of appeal appellant contends that said findings are unsupported by the evidence.

Manifestly, however, the evidence is conflicting on the controlling issues; and beyond question the testimony adduced on the part of respondent is more than ample to sustain the conclusions drawn therefrom by the trial court. The essential facts established thereby are as follows: Richard Gump, appellant's son, consulted W. B. Wright, an attorney then connected with the law offices of Leslie C. Rogers, concerning an action for divorce which Gump's wife contemplated instituting against him and which Gump stated he did not wish to contest but, on the contrary, desired should be granted as speedily and with as little publicity as possible. Wright advised him that this could be accomplished by merely filing in his behalf a formal, unverified answer to his wife's complaint, but that if provision were to be made in the decree for the payment of alimony to Mrs. Gump and for the support of their infant child an agreement to that effect should be consummated before the case was heard in court. Negotiations to that end were opened by Wright and shortly thereafter Mrs. Gump's attorney informed him that Mrs. Gump had altered her plans and intended to sue for separate maintenance instead of a divorce. Gump likewise had no defense to interpose to such an action, and consequently Wright stated that under the circumstances he would devote his efforts toward securing for him a more favorable settlement agreement than the burdensome one submitted by Mrs. Gump's attorney. While negotiations therefor were going on and on January 1, 1932, the said Leslie C. Rogers and Messrs. Clark and O'Brien formed a law partnership with which Wright became associated; the Gump matter was taken over as firm business, and during that month a bill for $150 was sent to Gump for services rendered to January 20, 1932. Shortly afterwards and while the bill remained unpaid Gump learned certain facts concerning his wife's conduct which admittedly entitled him to a divorce; and on February 9, 1932, Gump and Wright brought these new disclosures to the attention of Clark with the request that he take active charge of the case. After going over the matter with Gump, Clark stated that manifestly divorce charges based on the newly discovered facts should be pressed because as the matter then stood Gump was being literally forced, in the action for separate maintenance, to enter into an unreasonable and oppressive settlement agreement with his wife. Clark went

on to say, however, that in order to obtain full advantage of the new disclosures and successfully prosecute a case based thereon, the attorney having charge thereof, whoever he was, would be compelled to devote the major portion of his time exclusively to the case for an indefinite period, and that under the circumstances he was unwilling to proceed with the matter and would cause his firm to withdraw unless Gump's father personally employed the firm to take charge of the case and agreed personally to pay for the services thereafter to be rendered. Two days later, it appears, appellant called on Clark at his office and the matter of the new disclosures and the apparent effect thereof were gone over with him, and he was likewise advised that in order to secure for his son the full measure of the additional legal rights he would be entitled to receive as a result of said new disclosures would require much more time, labor and skill on the part of the attorney having charge of the case than was called for by the original employment with his son; and that under the circumstances the firm intended to withdraw unless he personally agreed to pay for the services to be rendered; and according to the testimony given by Clark and Wright appellant then and there directed Clark to proceed with the case and promised to become primarily responsible for the payment of the services to be performed. The matter of hiring a private investigator to secure evidence substantiating the charges was then taken up, and according to the testimony of Clark and Wright appellant agreed also to pay for such services; and finally at the conclusion of the interview, at which appellant's two sons, Richard and Robert, were present, Clark said to appellant that inasmuch as he ''was paying the bills'' it was quite probable he would prefer to have his own private attorney handle the case, and that if so, his firm was perfectly willing to withdraw. But appellant replied in the negative, giving his reasons therefor, and insisted that Clark go ahead with the case; and Clark then stated that with such understanding he would take care of the case, which he did, and eventually, after devoting a great deal of time to the matter, brought about a settlement of the litigation which was entirely satisfactory to appellant and his son. True, much of the testimony given by Clark and Wright as to appellant's promise to become primarily responsible for the payment of the attorneys' fees was disputed by appellant and his two sons, but it is apparent that their testimony at

most raised but a conflict on the material issues upon which the trial court found against appellant.

The legal principle of the cases cited by appellant to the effect that any ambiguity in a contract between attorney and client, because of the confidential relationship involved, must be resolved against the attorney, is not applicable here because no issue of ambiguity of contract is involved. The existence of the contract itself is challenged, and as held in numerous cases the confidential relationship between attorney and client does not arise until the contract between them is made and that in agreeing upon its terms the parties deal at arm's length. (*Cooley* v. *Miller & Lux,* 156 Cal. 510, 524 [105 Pac. 981]; *Boardman* v. *Crittenden,* 52 Cal. App. 438, 450 [198 Pac. 1020].) Inapplicable also is the doctrine of that group of cases holding that where a person has already entered into a contract with another whereby he becomes morally and legally bound to perform a particular service, any agreement made subsequent with him by a third party to pay for the same service is without consideration and cannot be legally enforced, for the reason that under the original employment with Richard Gump said firm was called upon to perform only the ordinary, nominal services connected with a non-contested proceeding; whereas subsequently new facts developed not contemplated and which could not be foreseen at the time of the original employment, which not only entitled Gump to a divorce from his wife, but in any event called for the performance of much additional service on the part of his attorneys and so changed the matter from its original aspect as to justify a demand for additional compensation or a withdrawal from the case (*Lavenson* v. *Wise,* 131 Cal. 369 [63 Pac. 622]); and thereupon, as shown, after appellant had been made acquainted with the entire situation he entered into a new and separate contract of employment with the firm to proceed with the case, based on said new developments, and agreed to pay for the legal services to be thereafter rendered. It will be seen, therefore, that appellant's contract of employment called for the performance of legal services which were in their nature different from those which the firm had obligated itself to perform under the original contract of employment with appellant's son.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 24, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 20, 1936.