[Civ. No. 32907. Second Dist., Div. Two. Apr. 2, 1969.]

OIL BASE, INC., Plaintiff and Appellant, v. CONTINENTAL CASUALTY COMPANY et al., Defendants and Respondents.

Hanna & Morton and John H. Blake for Plaintiff and Appellant.

Betts & Loomis, John A. Loomis, Brill, Hunt, DeBuys & Burby, Edward A. DeBuys and Abe Mutchnik for Defendants and Respondents.

ROTH, P. J.—Appellant, a manufacturer of oil base drilling mud, seeks to recover from respondent Continental Casualty Company (Continental) and respondent Carl H. Beahm,

an insurance broker (Beahm), expenses and fees it had reasonably expended in defense of an action brought against it which it claims, should have been defended by Continental.

Effective August 7, 1957, Beahm obtained on behalf of appellant, a general comprehensive liability insurance policy (policy) issued by Continental. It states the risk as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of the use thereof, caused by accident. . . ."

Paragraph II stated:

"With respect to such insurance as is afforded by this policy the company shall (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . . ."

Paragraph IV stated: ". . . This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."

The trial court in Finding XIII found: "The . . . policy was accepted by plaintiff without actual knowledge of the existence of language relating to the application of the policy to accidents occurring within the United States of America, its territories or possessions, or Canada. Plaintiff accepted said policy with the intention and belief that . . . Continental . . . did thereby obligate itself to insure against all claims and demands resulting from the use of plaintiff's products wherever that use may occur. . ."

Appellant, during the policy period, sold some bags of its drilling mud to Baritina de Venezuela, S.A. (Baritina) a South American company, and on May 19, 1958, also during the policy period, while the mud was stored in a warehouse belonging to Baritina, in Venezuela, it caught fire, from spontaneous combustion.

Appellant immediately notified Continental. Under date of June 23, 1958, Continental notified appellant in writing "since the accident occurred in Venezuela, our policy is not applicable."

In connection with the original issuance of the policy the court in Finding XIV found as true allegation 6 of appellant's second cause of action. Said allegation reads as follows:

"As consideration for said policy . . . Continental . . . did charge and collect . . . a premium which was in part based upon the total cash price received from sales to consumers who intended to and did use the products purchased outside of the continental United States of America, its territories, or possessions, or Canada."

Appellant was served with the summons and complaint filed by Baritina in Superior Court of California in and for the County of Los Angeles in December 1959.

The trial court in Finding IV found the gravamen of Baratina's complaint to be:

". . . said complaint . . . alleged that Baritina . . . ordered from plaintiff and plaintiff did manufacture, distribute and sell to Baritina . . . merchandise which was shortly thereafter, and prior to May 19, 1958, delivered by plaintiff to the said Baritina. . . . Said Complaint further alleged that the merchandise so sold and delivered to Baritina . . . was negligently prepared, manufactured and sold by Oil Base, Inc., *all in County of Los Angeles* and State of California, and thereafter, on or about May 19, 1958, while said merchandise was stored in the warehouse . . . located at Pamatacualito, Venezuela, the merchandise, as a proximate result of the *negligent preparation, manufacturing,* sale and delivery, did spontaneously ignite and set fire to property and did cause damages specified . . . to . . . Baritina. . . ." (Italics added.)

On January 5, 1960, appellant made demand on Continental to defend the Baritina action. Continental refused to and did not do so.

Appellant employed counsel, defended the Baritina suit and ultimately recovered a defense judgment which was final on or about January 20, 1965.

In respect of fees and expenses incurred by appellant, the court, in Finding XV, found ". . . that the amount paid by the plaintiff on account of its defense was in the sum of $21,021.05, and that said sum was the reasonable value of services rendered and expenses incurred."

Appellant brought the within action on January 28, 1965, within eight days after it had prevailed in the Baritina action. However, six and one-half years had elapsed after the Continental letter notifying appellant "our policy is not applicable" and more than five years had elapsed after January 5, 1960, the date on which Continental refused to defend the Baritina action.

Appellant, in its action had contended that Beahm was acting as agent for Continental. Continental contended that Beahm was the agent of appellant. The trial court found:

"During the period between August, 1957, and August 1958, . . . Carl H. Beahm either acted in the capacity of an insurance agent on behalf of . . . Continental . . . as an insurance agent is defined in Section 31 of the Insurance Code of the State of California, or engaged in the business of an insurance broker as the same is defined in Section 33 of the Insurance Code of the State of California."

Pertinent to the above, the court, by its Finding X found:

"At all times referred to . . George Miller . . . President . . . of plaintiff, . . . did rely upon his own employees and upon. . . Beahm to provide plaintiff with sufficient coverage to protect plaintiff in all of its business operations. George Miller did not, prior to May 19, 1958, read the . . . policy. . . . During the months of June and July, 1957, . . . Beahm took some part in an investigation being conducted by plaintiff relating to losses from fires and in which plaintiff's products were involved. Particularly during the months of June and July, 1957, but also earlier and later, George Miller had conversations with . . . Beahm. Because of the circumstances related in this Finding and circumstances related elsewhere in these Findings, George Miller concluded that his Company was covered against losses such as the loss described in Finding IV. . . ."

However, in spite of the above finding and the finding quoted at the outset that the ". . . policy was accepted by . . ." appellant without actual knowledge of the exclusion clause, the court, by its Finding XIX also found:

". . . it is not true that plaintiff accepted said policy . . . from . . . Continental . . . with any reasonable belief that said policy insured plaintiff against any claims or damages growing out of the purchase or use of plaintiff's products by any of plaintiff's customers outside the Continental United States."

The trial court found further that the "accident" described in Baritina's complaint "is not one which occurred within the United States of America, its territories or possessions, or Canada, as required by Paragraph IV of the insurance policy."

Appellant in its complaint to recover the fees and expenses it had paid to defeat Baritina's action, pleaded four alleged causes of action against Continental: breach of contract (of a

purported duty to defend) ; waiver of the exclusion clause; estoppel to assert it, and for reformation of the policy, to strike the exclusion clause. A fifth cause of action was directed exclusively against Beahm, for alleged breach of Beahm's commitment to secure for appellant adequate insurance coverage.

Respondents were permitted to amend their pleadings during the trial to set forth, in addition to defenses already pleaded, the applicable statute of limitations. Based on the statute of limitations, the court dismissed the fifth cause of action against Beahm, on the ground that it was barred by the Code of Civil Procedure, section 339, subdivision 1. The trial proceeded against Continental. The trial court held that appellant's claim was not embraced within the policy and that count 4, the reformation action against Continental, was barred by Code of Civil Procedure, section 338 subdivision 4; and that the first, second and third causes were barred by Code of Civil Procedure, section 337 subdivision 1. Appellant appeals from the separate judgments entered in favor of each respondent.

From the foregoing résumé of facts, it appears that appellant was charged and paid premiums on its gross business, foreign and domestic, and did not know that the exclusion clause was in the contract; the mud was manufactured in Los Angeles County; Baritina's complaint charged appellant with negligent manufacture and sale in Los Angeles County; appellant relied on his own employees and Beahm to protect it in all its business operations and appellant concluded it was covered for all emergencies included in the policy indemnity clause. Ambiguously, the court failed to find specifically, although raised as an issue in the pleadings, whether Beahm was acting as appellant's agent or Continental's agent.[1] The

[1]Beahm testified he had acted as agent for Continental continuously since 1928. Between 1956 and 1958 he also acted as agent for other companies; that he knew Miller, appellant's president, and knew Miller's father for whom he had also written insurance. He handled most of appellant's insurance between 1956-1958 and had handled a substantial amount thereof prior to those years; he had written accident insurance for employees of appellant for trips outside the United States, did not tell Miller appellant was not covered outside the United States and denied seeing brochure of appellant shown to him which explained appellant's foreign activities.

Miller testified he knew Beahm for 45 years; had had discussions with Beahm in respect of fires in foreign countries and that Beahm was present when tests were made to determine whether these fires were caused by the manner in which the material was packaged. When the Baritina fire occurred, he asked Beahm whether appellant was covered and Beahn replied ". . . yes, providing you are sued in the United States."

court did, as part of Finding VI, hold that Beahm was acting as defined in section 31 of the Insurance Code.

Section 31 reads: " 'Insurance agent' means a person authorized by and on behalf of an insurer to transact insurance." In the same Finding VI the court found Beahm was engaged in the business of an insurance broker as defined in section 33 of the Insurance Code.

Section 33 of said code provides: " 'Insurance broker' means a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer."

In spite of the ambiguous Finding VI above noted, the court made the conflicting Finding X alluded to *supra* and specifically found in Finding VIII that appellant ". . . accepted said policy with the . . . belief that . . . Continental did thereby obligate itself to insure against all claims . . . resulting from the use of plaintiff's products wherever that use may occur. . . ."

In addition to the foregoing, the policy in its indemnity clause, obligates insurer to pay damages because of loss ". . . caused by accident" and in paragraph 3 of the exclusion clause also uses the word "accident." It is established by case law that the word "accident" as used in an insurance policy, as will be shown *infra,* is itself inherently ambiguous.

Relying on *Hagen Supply Corp.* v. *Iowa Nat. Mut. Ins. Co.,* 331 F.2d 199, Continental takes the position that the place of a happening of an accident controls the definition as used in the indemnity and in the exclusion clause. Appellant relies on *Brant* v. *Citizens Mut. Auto. Ins. Co.,* 4 Mich.App. 596 [145 N.W.2d 410], and takes the position that the place of proximate cause is the place of accident or as the *Brant* case points out, there can be two accidents.

■ Sensitive to the fact that the exclusion clause in the policy is not in fine print, we are nevertheless persuaded that on the facts disclosed, which are essentially uncontradicted, the principles set forth in *Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 105, 419 P.2d 168] and *Lowell* v. *Maryland Cas. Co.,* 65 Cal.2d 298 [54 Cal.Rptr. 116, 419 P.2d 180], are decisive of this appeal. In *Gray,* the court said at pages 269-271:

". . . doubts as to meaning must be resolved against the insurer and . . . any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.

"These principles of interpretation of insurance contracts have found new and vivid restatement in the doctrine of the adhesion contract. . . .

"Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect.

" . . . . . . . . . . . . .

"Professor Patterson, in describing one characteristic consequence of 'the conception of adhesion, whether that term is used or not,' writes: 'The court interprets the form contract to mean what a reasonable buyer would expect it to mean, and thus protects the weaker party's expectation at the expense of the stronger's. This process of interpretation was used many years ago in interpreting (or construing) insurance contracts. . . .' (fn. omitted; Patterson, *The Interpretation and Construction of Contracts* (1964) 64 Colum.L.Rev. 833, 858.)"

 Wholly aside from the adhesion aspects of the policy before us arising from the facts at bench and the principles set out in *Gray*, there is, as pointed out above, a real question as to the meaning of place of accident as that term is used in an insurance policy of the type before us.

*Hagen* is an all fours case. It involved a products liability policy, issued to the manufacturer of tear gas devices, containing the following exclusionary clause: ". . . [as to] operations, if the accident occurs after such operations have been completed or abandoned and occurs away from the premises owned, rented or controlled by the named insured." In *Hagen*, the insured, pursuant to order shipped its products to purchaser in another city, where purchaser was injured. Purchaser alleging negligence in manufacture, sued the manufacturer who demanded a defense which insurer refused. Manufacturer settled the claim and sued the insurer for indemnity and for the legal expenses incurred. Judgment went to the insurer. The trial court held that the accident had not occurred on the insured's premises, as was required under the exclusion clause of the policy in issue. On appeal, the insured argued as does appellant here, that the negligent act which was the proximate cause of the injury occurred on the insured's premises and was therefore controlling; and that

the insured premises were the place of the accident. The Eighth Circuit affirmed and said (331 F.2d 199, 202):

". . . the question to be resolved here concerns the place where the accident occurred, not the proximate cause of it. In *Hultquist* v. *Novak*, 202 Minn. 352, 278 N.W. 524 (1938) a case involving a factual situation and a policy closely akin to this case, the Minnesota Supreme Court responded to an argument similar to *Hagen's* in the following language:

" 'The place of happening of the accident controls the coverage under subdivision (a). Some circumstances may have occurred on the premises which may have contributed to an injury which resulted from an accident occurring elsewhere. This may have resulted in liability on the part of defendant without coming within the coverage of the policy because the accident did not happen within the area limited by the terms of the contract. We are concerned here with the whereabouts of the accident, not with the question of proximate cause [citations].' "

The Eighth Circuit also determined in *Hagen* that the insurer was under no duty to defend the insured against the third party action and said at pages 203-204:

". . . The general rule is that an insurance company under a provision requiring it to defend an action, even if it is groundless, false or fraudulent, is under no duty to defend a claim which is outside the coverage provided by the policy [citations]."

However, in *Brant, supra,* the Michigan Court of Appeals refused to follow *Hagen.* In *Brant,* a declaratory relief action, the insured sought to obligate the insurer to indemnify the insured for expenses in defending an action, which the insured claimed was covered by the policy. The *Brant* policy was a comprehensive general liability policy and specifically excluded the type of coverage listed as "products-hazard." *Brant* had sold a natural gas heater to a purchaser who alleged that, although he had ordered a butane or liquid petroleum gas heater, Brant negligently sold him a natural gas heater. When the purchaser installed the heater and connected it to butane or liquid petroleum, a child was asphyxiated. The trial court applied the rule of *Hagen.* However, the appellate court reversed and said (at 145 N.W.2d 412):

"On appeal, this court must determine whether the policy purchased by appellants covered the specific 'accident' which formed the basis for the suits the plaintiffs are defending.

"The fact situation of the instant case is actually composed

of two incidents, both of which we regard as 'accidents.' The first 'accident', occurred when the appellants here sold [the purchaser] the wrong heater according to the complaints in the suits against the Brants. The issue of whether this sale was a question of mistake, negligence or breach of warranty is not before this court. It will be settled in the other litigation referred to above, along with the question whether the appellants here or others were legally liable for the resulting injury. However, this does not mean that the sale as made by appellants was not an accident.''

██ Under California law, as stated in *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.*, 51 Cal.2d 558, 563 [334 P.2d 881]:

''No all-inclusive definition of the word 'accident' can be given. It has been defined as ' ''a casualty —— something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured.'' ' [Citations.] It ' ''includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*'' ' [Citations.] ██ 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause.' [Citation.]''

In *Maxon* v. *Security Ins. Co.*, 214 Cal.App.2d 603, 612 [29 Cal.Rptr. 586], the court adopted the definition of accident, as found in *Hyer* v. *Inter-Insurance Exchange etc. of Southern Cal.*, 77 Cal.App. 343, 348-349 [246 P. 1055]:

''It is an 'occurrence which produces hurt or injury.' It also will be noticed that under this quite generally approved definition the word, as used in some classes of cases, denotes the cause of the hurt or loss; in other classes of cases it denotes the event, i.e., the unintended and unexpected loss or hurt apart from its cause; and in still other instances it may denote both the cause and the event, no attempt being made to discriminate between them. . . . But as commonly *used in liability insurance policies,* the word 'accident' is predicated of an occurrence which is the *cause* of the injury. *That is to say, as used in liability insurance contracts, the word is employed to denote the cause, rather than the effect.*'' (Italics added.)

██ In the light of the quoted definitions, particularly the definition in *Hyer,* it is indisputable that the word ''accident'' as used in liability insurance policies, is susceptible of

several meanings. In the policy at bench, Continental chose not to define the word "accident," although the policy supplies other definitions. Uncertainty as to the intended meaning of the word "accident" could have been clarified by the language of the exclusionary clause.

*Gray* holds too, that the policy clause obligating an insurer to defend, is severable from its liability for the loss insured against and makes clear that an insurer may be responsible on the obligation to defend, even though there may have been no obligation to indemnify for loss. In *Lowell,* the court had substantially the same policy language of both the indemnity and defense clauses before it. Both cases hold that a policy must be construed so as not to defeat the reasonable expectation of the insurer.

At bench, the findings of the trial court disclose without ambiguity appellant's reasonable expectations.

The policy is called a general comprehensive liability policy. It defines the risk coverage without geographic limitations. In Paragraph II of the policy, Continental undertakes to defend any suit afforded by the insurance ". . . even if such suit is groundless, false or fraudulent. . . ." Paragraph III sets out the exclusion clause. Accident is not defined therein nor is it defined anywhere else in the policy. At the end of the paragraph labeled "Insuring Agreements," language appears limiting application of the policy to accidents which occur within the United States. This provision is misplaced. It is not listed among the exclusions or the conditions, and it does not purport to be an agreement. It does not refer to the promise to defend. It refers only to accident. Both *Lowell* and *Gray* make it clear that the promise to defend an action is a general promise, even if the action is found to be groundless. It was reasonable for appellant to expect, as he did, a defense to a third party action.

On the facts at bench the language of the court in *Gray, supra,* at pages 272-273, is apposite:

"But the insurer argues that the third party suit must seek 'damages which are *payable* under the terms of this endorsement'; it contends that this limitation *modifies* the general duty to defend by confining the duty only to actions seeking damages within the primary coverage of the policy. Under 'Exclusions' the policy provides that it 'does not apply . . . under coverage L and M to bodily injury . . . caused intentionally by . . . the insured.'

"The very first paragraph as to coverage, however, provides

that 'the company shall defend any such suit against the insured alleging such bodily injury' although the allegations of the suit are groundless, false or fraudulent. This language, in its broad sweep, would lead the insured reasonably to expect defense of *any* suit regardless of merit or cause. The relation of the exclusionary clause to this basic promise is anything but clear. The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend against a suit for bodily injury which alleged he had caused it, negligently, non-intentionally, intentionally or in any other manner.''

At page 274, the *Gray* court says:

''. . . Since we must resolve uncertainties in favor of the insured and interpret the policy provisions according to the layman's reasonable expectations, . . . and since the effect of the exclusionary clause is neither conspicuous, plain, nor clear, we hold that in the present case the policy provides for an obligation to defend and that such obligation is independent of the indemnification coverage.''

### STATUTE OF LIMITATIONS

In our opinion, the statute of limitations does not apply. The duty of the insurer to defend is a continuing duty. (*Firco, Inc.* v. *Fireman's Fund Ins. Co.* (1959) 173 Cal.App. 2d 524 [343 P.2d 311]; *Lubin* v. *Lubin* (1956) 144 Cal.App. 2d 781 [302 P.2d 49]; *Ross* v. *Tabor* (1921) 53 Cal.App. 605 [200 P. 971]; *Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740 [47 P.2d 273]; *Arenson* v. *National Auto. & Cas. Ins. Co.* (1955) 45 Cal.2d 81 [286 P.2d 816].)

In *Lubin,* the court said at page 791:

''In those cases where a continuing contract involves the rendering of benefits to the plaintiff before the date for final performance the rule is as stated in 16 California Jurisprudence, section 110, page 511: 'In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action.' ''

Continental had a continuing duty to defend, which it could have assumed at any time, before final judgment. Although Continental refused acceptance of the complaint and summons served on appellant, it could have indicated its willingness to appear and defend at any time before trial,

during trial, and at any stage before final judgment. Until Baritina's action was terminated by final judgment, Continental had a duty which it could elect to assume. Continental's duty having been a continuous one, appellant could elect to wait until a final judgment had been entered and the duty to defend had ceased. As appears from the facts, appellant waited only a few days after its cause of action against Continental had accrued before it filed an action.

Since we have found that Continental is obligated to defend Baritina's action, there can be no cause of action against Beahm.

The judgment in favor of Beahm is affirmed.

Since the facts are undisputed and the trial court has found the fees and expenses incurred by appellant to have been reasonable, the judgment in favor of Continental is reversed, and the trial court is directed to enter a judgment in favor of appellant, Oil Base, Inc., a corporation.

The respondent Beahm is to recover his costs on appeal from Oil Base, Inc. Oil Base, Inc. is to recover its costs from Continental.

Herndon, J., and Fleming, J., concurred.