Casey **TIBBS**,
Plaintiff/Appellee/Cross-Appellant,

v.

**GREAT AMERICAN INSURANCE COMPANY**, Defendant/Appellant/
Cross-Appellee.

Nos. 83–6362, 83–6471.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1984.

Decided March 18, 1985.

Louis E. Goebel, Goebel & Monaghan, San Diego, Cal., for plaintiff/appellee/cross-appellant.

William C. Pate, Jennings, Engstrant & Henrikson, San Diego, Cal., for defendant/appellant/cross-appellee.

Before FLETCHER, BOOCHEVER, and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Great American Insurance Company (Great American) appeals a jury verdict finding that it breached its implied covenant of good faith and fair dealing by

failing to defend Casey Tibbs in a personal injury action. Tibbs cross-appeals, contending that the district court abused its discretion by excluding a witness's statement and by refusing to direct a verdict in his favor. Tibbs also seeks attorneys' fees pursuant to Fed.R.App.P. 38. We affirm the jury's verdict, but deny Tibbs attorneys' fees.

## I

## BACKGROUND

This appeal arises out of a lawsuit brought against Great American over its duty to defend Tibbs as an alleged employee of San Diego County Estates, Inc. (San Diego). On July 1, 1974, Great American issued a liability policy to San Diego, a resort development in southern California, for the period of July 1, 1974 to April 1, 1977. The policy contained a Multi-Purpose Endorsement adding as an additional insured "any employee of the named insured while acting within the scope of his duties ..."

In July 1974, San Diego hired Tibbs, a rodeo star, to serve as its Director of Western Activities. He was responsible for managing an equestrian center and for promoting the development. In 1974, Tibbs was covered by the insurance contract as an additional insured. However, in 1975 and 1976, the terms of Tibbs's employment contract changed, requiring him to provide his own liability insurance. Bill Watt of Watt Industries, Inc. (owner of San Diego) informed Tibbs that if he failed to obtain adequate insurance, Watt Industries would withhold the cost of insurance from his salary. Although the 1975 and 1976 employment contracts attempted to characterize Tibbs as an independent contractor, his duties as Director of Western Activities remained substantially the same.[1] Moreover, neither Watt Industries nor Great American modified the original insurance contract covering San Diego employees as additional insureds to reflect the change in Tibbs's 1975 and 1976 employment contracts.

On March 12, 1976, Diane Wassgren was seriously injured while riding a horse owned by Tibbs. She filed a personal injury action in San Diego County Superior Court naming Tibbs.[2] The attorney employed by Great American appeared on behalf of all the defendants except Tibbs. Although represented by counsel at the outset of the case, Tibbs appeared in propria persona during the trial. In April 1981, the jury returned a verdict in favor of all defendants, including Tibbs.

In October 1981, Tibbs filed a diversity action in district court, alleging that Great American breached its duty of good faith and fair dealing by failing to defend Tibbs in the Wassgren trial. In October 1983, a jury returned a verdict in favor of Tibbs awarding him $200,000 in compensatory damages and $600,000 in punitive damages. Great American filed a motion for a new trial and a judgment notwithstanding the verdict. The district court denied both motions. Great American timely appeals[3] and Tibbs cross-appeals.

## II

## GREAT AMERICAN'S APPEAL

### A. Duty to Defend

Great American contends that the district court erroneously interpreted Califor-

---

1. In 1975, Tibbs assumed the added responsibility of the "dude string," a group of trail horses. Tibbs would assist in saddling the horses and starting riders on the trail.

2. The other defendants included Watt Industries, Inc., which allegedly owned San Diego; Phillip Nicholson, who allegedly owned the property where the accident occurred; and Vincente Estates, Inc., a partner of Watt Industries.

3. Tibbs argues that Great American's notice of appeal was prematurely filed because it was filed before the entry date of the order dispos-

ing of the new trial motion. This contention lacks merit. Fed.R.App.P. 4(a)(4) states that a notice of appeal filed before the disposition of a post-trial motion shall have no effect. The term "disposition," however, has been defined to mean "announcement" of the decision denying the motion. *See Calhoun v. United States,* 647 F.2d 6, 10 (9th Cir.1981). Here the court announced its decision on October 17, 1983. The notice of appeal was filed on November 3, 1983. Thus, Great American did not file its notice of appeal prematurely.

nia law by failing to instruct the jury that Tibbs had to be an intended beneficiary of the insurance contract before Great American had a duty to defend him. The district court required only that the jury find that Tibbs was an employee of San Diego acting within the scope of his employment. We review the district court's interpretation of state law *de novo*. *In Re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984). We hold the district court correctly instructed the jury on Great American's duty to defend.

■ Under California law, the plain language of an insurance contract generally controls the application of an exclusionary clause to the duty to defend. *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 267, 54 Cal.Rptr. 104, 103–04, 419 P.2d 168, 169–70 (1966). However, the California Supreme Court has recognized an exception to this rule where the language of the insurance contract is not clear. *Id.* Until recently, the court tested the meaning of the policy according to the insured's reasonable expectation of coverage if the policy language was ambiguous. *Id.; see also Wint v. Fidelity & Casualty Co.*, 9 Cal.3d 257, 264, 107 Cal.Rptr. 175, 180, 507 P.2d 1383, 1387–88 (1973) (homeowner's insurance policy did not cover additional insured because the policy clearly excluded business-related accidents from coverage and the named insured could not reasonably expect the policy to cover such accidents).

In *Garcia v. Truck Insurance Exchange*, 36 Cal.3d 426, 437, 204 Cal.Rptr. 435, 440, 682 P.2d 1100, 1105 (1984), the court expanded the exception articulated in *Gray* and *Wint*, holding that evidence of the intent of *both* contracting parties (not merely the named insured) was relevant and admissible to determine whether an insurance contract entitled a third party to a defense. The *Garcia* court assumed, for purposes of analysis, that the language of the insurance policy was ambiguous. *Id.* at 436, 204 Cal.Rptr. at 439, 682 P.2d at

1104. The court also emphasized that the policy language was reasonably susceptible of the interpretation the witness placed on it. *Id.* at 435–36, 204 Cal.Rptr. at 439, 682 P.2d 1104. Thus *Garcia* left standing the general rule underlying *Gray* and *Wint* that the plain language of an insurance contract controls if it clearly defines the application of an exclusionary clause to the duty to defend.

■ In this case, the insurance contract clearly covered Tibbs as an employee of San Diego. Unlike the insurers in *Garcia*, *Wint* and *Gray*, Great American does not dispute the district court's interpretation that the policy covered Tibbs. The evidence Great American submitted to support its contention that Tibbs was excluded from coverage concerned events which occurred after July 1974, the date Great American and Watt Industries signed the insurance contract. That Watt Industries intended to exclude Tibbs after the policy went into effect is therefore irrelevant because Watt Industries and Great American failed to modify the original policy that covered Tibbs.[4]

### B. *Punitive Damages*

■ Great American next contends that the district court improperly permitted the jury to assess punitive damages.[5] Great American argues that punitive damages cannot be awarded because its refusal to defend Tibbs is at most a breach of contract. We review *de novo* the district court's instruction to the jury that it could award punitive damages. *See McLinn*, 739 F.2d at 1397. We review under the substantial evidence test to determine whether the record supports a finding that the prerequisites for a punitive award were met. *Fleming v. Safeco Insurance Co.*, 160 Cal. App.3d 31, 44, 206 Cal.Rptr. 313, 320 (1984). We find that the record supports the jury's award of punitive damages.

---

**4.** Watt Industries' efforts to exclude Tibbs from coverage by characterizing him as an independent contractor were unsuccessful in any event because the jury found that Tibbs was an employee.

**5.** Great American does not challenge the *amount* of punitive or compensatory damages awarded by the jury.

Under California law, punitive damages are not available for breaches of contract no matter how gross or willful. *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F.2d 385, 399 (9th Cir.1983). Punitive damages are recoverable, however, when the defendant breaches the implied covenant of good faith and fair dealing *and* is guilty of oppression, fraud or malice. *San Jose Production Credit Ass'n v. Old Republic Life Insurance Co.*, 723 F.2d 700, 705 (9th Cir. 1984). All insurance contracts contain an implied covenant of good faith and fair dealing which "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Id.* at 703, *quoting Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). Refusal to defend, without more, does not constitute a breach of the implied covenant. *San Jose*, 723 F.2d at 703–04. Although a bad faith refusal to defend may constitute a breach of the implied covenant (*see e.g., Smith v. American Family Mutual Insurance Co.*, 294 N.W.2d 751 (N.D. 1980); *Gordon v. Nationwide Mutual Insurance Co.*, 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d 849 (1972), bad faith does not necessarily indicate the presence of malice, oppression or fraud. *Fleming*, 160 Cal.App.3d at 44, 206 Cal.Rptr. at 320. "There must be substantial evidence of intent to vex, injure and annoy, a conscious disregard of plaintiff's rights, before punitive damages may be awarded." *Betts v. Allstate Insurance Co.*, 154 Cal.App.3d 688, 709, 201 Cal.Rptr. 528, 540 (1984).

In this case, there is sufficient evidence to support a finding that Great American refused to defend Tibbs in bad faith and is guilty of oppression, fraud, or malice. John Bickley, chief in-house counsel for Great American, was advised by several of Great American's employees, including Germaine Brisebois, a branch manager for Great American, and Paul Kennerson, Great American's attorney assigned to the Wassgren case, that Tibbs was proba-

bly entitled to a defense. Yet, Bickley conducted little or no investigation into Great American's duty to defend: he did not compare Tibbs's claim with the insurance company policy or even inspect the policy itself. In fact, when informed that the state court judge thought that Tibbs was entitled to a defense, Bickley responded, "F___ the Judge."

Great American's refusal to defend Tibbs breached the implied covenant of good faith and fair dealing. Bickley's failure to consider seriously the opinions of Great American's own staff and to investigate adequately Tibbs's duty to defend claim support a finding that Great American's refusal to defend was made in bad faith. Evidence of Bickley's conduct further supports a finding that Great American consciously disregarded Tibbs's rights and was therefore guilty of oppression, fraud or malice. Thus, the district court properly instructed the jury on punitive damages and substantial evidence supports the jury's punitive damage award.

## C. Statute of Limitations

Great American finally contends that Tibbs's action for breach of the implied covenant of good faith and fair dealing is barred by the two-year statute of limitations applicable to tort actions. Great American argues that Tibbs's cause of action accrued in 1977 when Great American first refused to defend him and therefore his filing this action in 1981 was untimely. We hold that the statute of limitations does not bar Tibbs's action.

Under California law, Tibbs's cause of action did not accrue until the final judgment in the Wassgren case. *See Oil Base, Inc. v. Continental Casualty Co.*, 271 Cal.App.2d 378, 389–90, 76 Cal. Rptr. 594, 601 (1969); *Comunale v. Traders & General Insurance Co.*, 50 Cal.2d 654, 662, 328 P.2d 198, 203 (1958). The insurer's duty to defend is a continuing duty that may be assumed any time before final judgment. *Oil Base*, 271 Cal.App.2d at 389–90, 76 Cal.Rptr. 594. The insured

may therefore elect to wait until a final judgment is entered before filing his action against the insurer. *Id.* Because Tibbs filed this action within a few weeks of the conclusion of the Wassgren trial, his duty to defend claim is timely.

## III

### TIBBS'S CROSS APPEAL

#### A. Excluded Statement

■ Although Tibbs prevailed below, he nevertheless cross-appeals from the judgment. He contends that the district court abused its discretion by excluding John Bickley's statement that "no court of law is going to tell us what to do." Any error that the exclusion of this statement may have caused was harmless. *See* Fed.R. Civ.P. 61. First, the jury heard Bickley's statement "F___ the Judge." Second, the jury awarded Tibbs substantial punitive damages. It is therefore unlikely that the excluded statement would have altered the amount of damages.

#### B. Directed Verdict

■ Tibbs also contends that the district court should have directed a verdict on liability. The district court may direct a verdict if the "evidence permits only one reasonable conclusion as to the verdict." *California Computer Products v. International Business Machines Corp.,* 613 F.2d 727, 733 (9th Cir.1979), *quoting Fountila v. Carter,* 571 F.2d 487, 489–90 (9th Cir.1978). Here, Great American offered evidence suggesting that Tibbs was an independent contractor and not an employee within the meaning of the insurance policy. Thus, the district court properly denied the motion for a directed verdict.

#### C. Attorneys' Fees

■ Tibbs seeks attorneys' fees pursuant to Fed.R.App.P. 38. Under Rule 38, the court will award attorneys' fees if the appeal is frivolous or the result is obvious. *See NLRB v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982). Great American's appeal raised substantial questions of law

as to which the answers were not foregone conclusions. We therefore deny Tibbs's request for attorneys' fees.

## IV

### CONCLUSION

We affirm the jury's verdict finding that Great American breached its duty to defend Tibbs and its award of compensatory and punitive damages. We deny Tibbs's request for attorneys' fees.

AFFIRMED in part, DENIED in part.