[No. D016819. Fourth Dist., Div. One. Nov. 20, 1992.]

NORTH STAR REINSURANCE CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; SUNDANCE FINANCIAL, INC., et al., Real Parties in Interest.

**COUNSEL**

Quisenberry & Barbanel, Alan H. Barbanel, Stephen D. Treuer and Gregory K. Berry for Petitioners.

No appearance for Respondent.

Gray, Cary, Ames & Frye, Jeffrey M. Shohet and Robert C. Longstreth for Real Parties in Interest.

## OPINION

**TODD, J.**—Is the three-year statute of limitations applicable to an action for reformation based on mistake (Code Civ. Proc.,[1] § 338, subd. (d)) tolled with respect to an excess insurance or "umbrella" policy as in the tolling that applies during the time the underlying primary insurance carrier performs its duty to defend under a reservation of rights? Under the circumstances of this case, where the defense was not tendered to the excess carrier with the result that its duty to defend had not commenced, and where the insured was notified in writing of the coverage problem due to an exclusion contained in the excess insurance contract, we hold there is no tolling of the limitations period as to the excess carrier during the prosecution of the underlying action in which there would have been tolling as to the underlying insurer if it had been defending under a reservation of rights. (See, e.g., *Lambert* v. *Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1077 [282 Cal.Rptr. 445, 811 P.2d 737].)

Accordingly, we grant the petition for a writ of mandate brought by the excess insurer to require the superior court to grant a summary judgment in its favor on the ground the insured's action for reformation of the excess insurance contract and for declaratory relief is time-barred by the three-year limitations period of section 338, subdivision (d). There are no issues of material fact concerning the matter.

### FACTS

In March of 1985, the insured, Pacific Scene,[2] was served with summons and complaint in a condominium construction defects case against it entitled "Charter Point Homeowners Association v. Treetops Unlimited, et al." Through its attorney, Jerold H. Goldberg, Pacific Scene tendered the defense of the Charter Point action to the insurance company which was its primary insurer until January 1, 1985, Fireman's Fund Insurance Company, which provided a defense without reservation of rights; and to the company which was its primary insurer after that date, California Union Insurance Company.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]Plaintiffs in the present lawsuit, Great American Development Company and Sundance Financial, Inc., are the successor names for Pacific Scene and Financial Scene, respectively. Treetops Unlimited is a joint venture between Pacific Scene, Inc., and Financial Scene, Incorporated. For convenience, we refer to these entities as the insured or Pacific Scene.

Goldberg did not tender the defense of the Charter Point action to Pacific Scene's excess insurer, North Star Reinsurance Corporation and General Star Indemnity Company (North Star). According to Goldberg, it was not his practice to tender the defense to carriers providing excess insurance unless the underlying insurance was or likely would be exhausted since an excess carrier's obligation to defend does not generally arise until the exhaustion of the underlying coverage. However, in November 1986, an arbitrator assessed the nature and cost of repair of the alleged defects at approximately $13 million. This figure far exceeded Goldberg's earlier belief as to the probable range of exposure for the alleged defects and raised the potential of exhaustion of the underlying coverage.

As a result of the developing information about the extent of Pacific Scene's exposure, on November 12, 1986, Goldberg notified North Star by letter of the Charter Point action and of the possibility that Pacific Scene's liability could exceed the primary coverage. In December 1986 and again in February 1987 Goldberg wrote additional letters to North Star confirming the likelihood of exhaustion of the underlying insurance and citing liability settlement figures in the range of $11.8 to $11.6 million.

On March 20, 1987, Alfred T. Childers, claims examiner for General Star Management Company, which acted as the agent for North Star on these matters, telephoned Goldberg and indicated he would be sending a letter reserving rights of the excess carrier. Childers mentioned a "work product" exclusion to which Goldberg responded that such an exclusion would not apply because all of the work was performed by subcontractors. Goldberg told Childers of the underlying coverage without reservation of rights and declared his belief that any issue of coverage under the North Star policy "now appeared to be moot." This telephone call was the first communication received from North Star. A March 27, 1987, letter from Goldberg to Childers confirmed the conversation and requested Childers to advise him "to the extent you desire to issue a reservation of rights . . . ."

On March 31, 1987, Goldberg received Childers's response, by letter dated March 24, that North Star "accepts receipt of this action under a full reservation of rights." The March 24 letter proceeded to lay out various policy provisions forming the basis of the reservation of rights. Among those provisions was an exclusion quoted in the letter as reading:

"[T]his policy shall not apply:

"(B) to property damage to (1) the insured's products arising out of such products or any part of such products or (2) work performed by or on behalf

of the insured arising out of the work or any portion thereof or out of materials, parts of [*sic*] equipment furnished in connection there with[.]"

The March 24, 1987, letter also quoted an identical exclusion in paragraph (3) of the contractor's endorsement contained in the excess policy. After identifying the various exclusions the letter stated, "There may be no coverage for any property damage which is subject to the above exclusions contained in our umbrella policy." The letter asserted certain additional grounds for denying or limiting coverage, none of which is pertinent to this case.

Goldberg read the March 24 letter but claimed that because the issue of coverage "had become moot," he did not "perform a detailed analysis of Mr. Childers' letter or study the subject insurance policy." In a letter of April 22, 1987, to his client, Pacific Scene, Goldberg pointed out "that, in the extensive correspondence from Mr. Childers, a number of specific basis are identified to support the reservation of rights. Most of these, in our opinion, are not well taken." Goldberg discussed other points concerning the excess insurance but expressed the view his discussion "is moot" since the underlying insurer was defending with no reservation of rights.

About 15 months later, on July 20, 1988, Goldberg wrote to a representative of North Star making reference to his attempts to contact other representatives of North Star and stating, in part:

"It has come to our attention that, at least based upon the documentation which has been provided to us, the [excess insurance] policies do not follow form with respect to the underlying insurance . . . particularly with respect to the inclusion of a broad form indemnity endorsement pursuant to which the insured is not subject to the work product exclusion to the extent of work performed by subcontractors and not performed directly by the insured."

A similar statement on the next page of the letter reads:

"According to the documentation which has been provided to us, the policies . . . do not follow form and, instead, include an express work product exclusion which purports to deny coverage for, among other things, property damage to work performed by *or on behalf of* the insured. As indicated above, this clearly was never understood or intended by our clients in connection with this coverage." (Original italics.)

On December 27, 1990, over three years and eight months after Childers sent Pacific Scene his March 24, 1987, letter for North Star, Pacific Scene filed the present action for reformation and declaratory relief against North

Star. The complaint includes causes of action against Pacific Scene's insurance broker for negligence and breach of contract for allegedly failing to secure the proper coverage under the North Star policy. Concerning the action against North Star, the complaint alleges that Pacific Scene intended the umbrella coverage to "follow form" of the underlying primary policies, and including the "own work" exclusion and omitting a broad form property damage endorsement was either a mutual or a unilateral mistake warranting reformation of the excess insurance policies.

North Star answered the complaint and asserted the bar of the statute of limitations under section 338. North Star moved for summary judgment contending the limitations period began running when Goldberg received the March 24, 1987, letter setting out the exclusions and claiming a reservation of rights on behalf of North Star. Pacific Scene opposed the motion arguing that (1) the cause of action did not accrue until 1988 when Goldberg discovered the absence of coverage, (2) even if the cause of action accrued in March 1987, it was tolled until resolution of the underlying construction defect litigation, and (3) the cause of action did not accrue until Pacific Scene suffered injury.

The trial court determined that Pacific Scene's cause of action against North Star accrued on March 31, 1987, when Pacific Scene received North Star's letter refusing the tender of the defense.[3] The court relied on the reasoning of cases such as *Lambert, supra,* 53 Cal.3d 1072, 1077 [261 Cal.Rptr. 72], *Israelsky* v. *Title Ins. Co.* (1989) 212 Cal.App.3d 611, 622-623, and *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378, 389-390 [76 Cal.Rptr. 594], holding the limitations period in actions by the insured against the insurer for refusal to defend after the defense has been tendered is tolled until resolution of the underlying action against the insured. The court stated in part:

"Equitable considerations dictate that the insured should not be forced to prosecute a cause of action against an insurer for failure to defend while simultaneously defending an action against a third party. The insured must be given the option to wait until the duty has expired before being required to vindicate that duty."

Accordingly, the court denied North Star's motion for summary judgment on May 8, 1992. North Star petitioned this court for a writ of mandate on

---

[3]The parties agree that the defense of the Charter Point action had not been tendered to North Star. Pacific Scene had merely notified North Star of the underlying action in November 1986 and North Star reserved its rights to deny coverage under the excess policy in March 1987.

May 29, 1992. Pacific Scene filed its opposition to the petition on June 25, 1992. On June 30, 1992, this court issued an order to show cause and stayed the trial of the matter which was scheduled for July 24, 1992.

DISCUSSION

I

 Initially, we deal with Pacific Scene's assertion a writ of mandate should not issue because there is an adequate remedy at law by way of appeal and issuance of the writ would not dispose of the action. On the latter point, it is the rule that "the statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim." (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155 [281 Cal.Rptr. 827].) Thus, Pacific Scene's argument that resolution of the limitations issue concerning its reformation cause of action will not resolve the declaratory relief count is without merit. Resolution of the limitations issue in the reformation count will also resolve the same issue in the declaratory relief count.

Without citation to the record, Pacific Scene also makes reference to North Star's "counterclaim for declaratory relief," and similarly to North Star's "own claims for declaratory relief." We find no such claims by North Star in its answer, which contains numerous affirmative defenses, or in any other document in the record. Thus, we cannot consider these references in connection with Pacific Scene's argument that resolution of the limitations issue for the reformation count will not dispose of the case.

Since resolution of the statute of limitations issue in North Star's favor would eliminate the need for a trial of the action between Pacific Scene and North Star, we deem it appropriate to entertain this writ petition rather than await an appeal after trial.

II

Now considering the merits of the petition, section 338, subdivision (d), sets forth a three-year limitations period for an "action for relief on the ground of fraud or mistake." This statute specifies "[t]he cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

 Here, there cannot be any factual dispute of merit that Pacific Scene discovered "the facts constituting the . . . mistake" when it received,

through Goldberg, the March 24, 1987, letter from North Star. The letter which Goldberg read directly set forth the excess insurance policy language showing the presence of the exclusions from coverage which Pacific Scene alleges were included by mistake and entitle it to reform the insurance contract. Moreover, the letter informed Pacific Scene that North Star was making "a full reservation of rights," and it told Pacific Scene that "[t]here may be no coverage for any property damage which is subject to the above exclusions contained in our umbrella policy." Pacific Scene's claims (1) it had insufficient knowledge, and (2) there is a question of fact concerning its knowledge, are rejected as a matter of law. (See *Sun'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 701-702 [148 Cal.Rptr. 329, 582 P.2d 920].) The cause of action for reformation based on mistake had accrued within the meaning of section 338 on receipt of the March 24, 1987, letter.

This conclusion leaves the question of whether any doctrine of tolling is applicable so as to extend the running of the limitations period. As noted, the trial court and Pacific Scene rely on the tolling rule applicable to actions between the insured and the insurer in which the equitable tolling is "based on the insurer's continuing duty to defend until final judgment, and on the fact that '[t]he Legislature cannot have anticipated the need to provide for equitable tolling during the time of the continuing duty.' " (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 620, quoting *Lambert, supra*, 53 Cal.3d 1072, 1079 [7 Cal.Rptr.2d 550, 828 P.2d 691].)

Here, of course, the duty of the excess insurer to defend had never arisen because Pacific Scene had never tendered the defense to North Star. (See *Lambert, supra*, 53 Cal.3d at p. 1077, "The duty [to defend] commences upon tender of the defense, and continues until the underlying lawsuit is concluded. (*Oil Base, supra*, 271 Cal.App.2d at pp. 389-390.)".) Thus, the rationale based on the continuing duty of the insurer to defend and the Legislature's not having anticipated a need to provide for equitable tolling during the existence of the continuing duty has no application to this case. Since both the rationale and the facts of those cases have no application or fundamental similarity to the case at bar where no continuing duty to defend exists, there is no reason to view them as authority in deciding this case. Accordingly, we do not apply those cases here.

*Lambert* points out that "[b]ecause the Legislature cannot 'predict all of the circumstances that come within the purpose of the tolling exceptions,' it is 'appropriate for courts to construe the statutory tolling scheme and implicit tolling exceptions to effect the ostensible legislative purpose. [Citation.]' " (53 Cal.3d at pp. 1078-1079, quoting *Lewis* v. *Superior Court* (1985) 175 Cal.App.3d 366, 372 [220 Cal.Rptr. 594].) Engaging in this

process, we find no basis for applying a tolling rule here. The trial court's rationale, "Equitable considerations dictate that the insured should not be forced to prosecute a cause of action against an insurer for failure to defend while simultaneously defending an action against a third party," is not pertinent to the situation at hand. The cause of action involved here is for reformation of the excess insurer's contract, not for failure to defend. This being the nature of the matter, the trial court's rationale would toll the limitations period for a contract reformation in any case where the party seeking to reform the contract is being sued in another case. We cannot attribute to the Legislature a purpose to accomplish this result which would render the three-year limitations period of section 338, subdivision (d), widely inapplicable.

Perhaps more appropriately, our focus should be on a narrower situation where a reformation of the excess insurance contract might result in later coverage in the same action upon exhaustion of the underlying insurance, which coverage clearly would not be present without the reformation. In this situation, there are no equitable considerations calling for tolling of the limitations period. The essential case here is that the party presently being sued and defended by one primary insurer pursuant to the duty of that insurer to defend simply also desires to reform an insurance contract issued by a different insurer, here the excess insurer, who then is under no duty to defend. There is a separate contractual relationship involved in the excess insurance matter with no attendant duty to defend.

The fact that a successful reformation *might* result in a determination, applicable sometime in the future, that there is excess coverage in the same case does not compel a different conclusion. In *Laird* v. *Blacker, supra,* 2 Cal.4th 606, 615, 619-620, a successful appeal of the underlying judgment in the case would have eliminated the legal malpractice action, but the Supreme Court held there was no equitable tolling of the malpractice cause of action during the pending appeal; the statute of limitations for legal malpractice actions commences on entry of an adverse judgment in, or final order of dismissal of, the underlying action.

*Laird* chose to uphold "the legislative goal of resolving cases while the evidence is fresh, witnesses are available, and memories have not failed." (2 Cal.4th at p. 618.) Though we deal with a three-year, rather than a one-year, statute of limitations as was involved in *Laird*,[4] similar policy considerations behind section 338, subdivision (d), call for rejection of the concept of

---

[4]*Laird* dealt with the provision of section 340.6, subdivision (a), that the statute of limitations for legal malpractice commences when the client discovers, or should have discovered, the cause of action. (2 Cal.4th at p. 609.)

equitable tolling in this case. Pacific Scene, perhaps unnecessarily soon, caused the underlying case and excess policy coverage issues to be brought to North Star's attention. Pacific Scene thereby set in motion a series of events which resulted in its receiving notice in March 1987 of the need for reformation. Yet Pacific Scene did not take action toward reformation of the excess policy until over three years, eight months later.

Under these circumstances involving no issues of material fact, we determine there was no tolling of the limitations period for the reformation action and the motion for summary judgment based on the bar of the limitations period should have been granted.

## III

At oral argument Pacific Scene referred to a theory of defense to the motion for summary judgment having to do with the availability of declaratory relief in the case separate and apart from its cause of action for reformation and separate and apart from its arguments seeking to defeat the statute of limitations bar to the reformation action. We have reviewed the record, particularly including Pacific Scene's complaint, its memorandum of points and authorities in opposition to the motion for summary judgment and its opposition to the petition for a writ of mandate. Pacific Scene's cause of action for declaratory relief alleges an actual dispute has arisen and an actual controversy exists in that, in part, "Plaintiffs further contend that the 'own work' exclusion and the absence of the Broad Form Property Damage Endorsement may not be relied upon by the defendants in denying their obligations to defend and indemnify plaintiffs in the Hillsborough actions, or in reserving their rights thereto" and, on the other hand, North Star contends "the 'own work' exclusion and the absence of the Broad Form Property Damage Endorsement may be relied upon by the defendants in denying their obligations to defend and indemnify plaintiffs from construction defect claims, including claims asserted in the Hillsborough actions, or in reserving their rights thereto." The remaining two paragraphs of the cause of action for declaratory relief read:

"26. Plaintiffs seek a judicial determination of the respective rights and responsibilities of the parties with respect to the written policy agreements, and *seek a declaration that the agreement does not reflect the true intent and agreement of the parties, that each such policy should be reformed to delete any 'own work' exclusion appearing therein and to include the Broad Form Property Damage Endorsement* as shown in Exhibit A, *and that defendants* NORTH STAR *and* GENERAL STAR *may not rely on the 'own work' exclusion or the absence of the Broad Form Property Damage Endorsement in denying*

*their obligations to defend and indemnify* plaintiffs in the Hillsborough actions, *or in reserving their rights thereto.*

"27. A declaration of the rights and responsibilities of the parties is essential and appropriate so that the parties may ascertain their respective rights and obligations with respect to the defense of the Hillsborough and other actions and the payment of any damages, judgment or other awards which may be recovered against plaintiffs as a result of such claims." (Italics added.)

Before praying for other forms of relief, Pacific Scene's complaint prays for a reformation of the policies in question "to reflect the true intent of the parties by deleting from each the 'own work' exclusion and by inserting in each the endorsement contained in exhibit A." The prayer of the complaint also includes a paragraph requesting:

"[A] *declaration* (a) that Policy No. NSU 23491 and Policy No. NSU 24623, issued to plaintiffs by defendant NORTH STAR, and Policy No. NEU 026421 issued to plaintiffs by defendant GENERAL STAR do not reflect the *true intent and agreement of the parties*; (b) that *the 'own work' exclusion is not properly part of the written policy agreements and should be deleted* therefrom; (c) that *the Broad Form Property Damage Endorsement as shown in exhibit A should be contained in the written policy agreements* in order to *reflect accurately the intent and agreement of the parties*; and (d) *that the 'own work' exclusion and the absence of a Broad Form Property Damage Endorsement may not be relied upon by the defendants in denying their obligations to defend and indemnify plaintiffs from claims such as the claims asserted in the Hillsborough actions, or in reserving their rights thereto*; . . ." (Italics added.)

Properly read, the allegations of the declaratory relief cause of action amount to no more than an alternative manner of pleading for reformation. The fact Pacific Scene makes references to a controversy and declaration about whether North Star may rely on the exclusionary language in the policies does not change this conclusion. The sum and substance of the allegations of the declaratory relief cause of action is reformation. If a court were to grant the declaratory relief prayed for, the legal effect would be identical to that involved in a successful reformation. Success under either cause of action would result in coverage under the policies by virtue of elimination of the exclusionary language. Moreover, only a theory of reformation in the form of adding coverage language of a "Broad Form Property Damage Endorsement" would effectuate this result.

The essence of the action here is for reformation with no separate theory of declaratory relief involved. Nowhere in the record do we find any citation

of the cases mentioned at oral argument (see, e.g., *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]; *Underwriters Ins. Co.* v. *Purdie* (1983) 145 Cal.App.3d 57 [193 Cal.Rptr. 248]), supporting the concept that this separate theory to defeat the motion was ever proposed or even suggested. Pacific Scene's references in its opposition to the petition for writ of mandate to the allegations about declaratory relief are merely conclusions without supporting authority or argument.[5] These assertions do not take the case out of the reformation category. Under these circumstances, it is inappropriate to consider this never-before asserted or briefed theory. (See *Royster* v. *Montanez* (1982) 134 Cal.App.3d 362, 367 [184 Cal.Rptr. 560], "a summary judgment must be reviewed on the basis of the papers filed at the time the court considers the motion"; and see *Jimmy Swaggart Ministries* v. *State Bd. of Equalization* (1988) 204 Cal.App.3d 1269, 1294 [250 Cal.Rptr. 891], " 'Where a point is merely asserted by appellant's counsel without any argument of or authority for the proposition, it is deemed to be without foundation and requires no discussion by the reviewing court.' ")

Viewed from a somewhat different perspective, the way Pacific Scene pled its declaratory relief cause of action made it appear to be no different from the reformation count. To merely claim it is different from reformation does not raise a new theory. Until oral argument, there was nothing in the record to indicate to a court or to North Star that the new theory was being relied upon. Since Pacific Scene took pains to plead the declaratory relief count and made a general, conclusionary reference that "reformation is not the relief sought" without alerting anyone this count was based on a different theory and was not simply a restatement of the reformation count, it was too late to rely on the new theory at oral argument.

---

[5]In its opposition to the petition, Pacific Scene's only statements about the declaratory relief count are: "Yet as GENERAL STAR concedes in the allegations supporting its petition, plaintiffs seek declaratory relief as well as reformation. (*Id.* at 4.) Part of the relief plaintiffs seek is a declaration that GENERAL STAR may not rely on certain exclusions to deny coverage, regardless of whether or not the policies are reformed to delete these exclusions. (Complaint, ¶ 26, Petitioners' Ex. 1.) The declaratory relief claim would remain even if GENERAL STAR's assertions about the reformation claims were accepted, and the entry of an order granting GENERAL STAR's motion for summary judgment and dismissing the action would therefore be inappropriate." And, "[t]hus, the policy reasons underlying the *Lambert* decision are fully applicable here, as is the interest in avoiding needless litigation. [Fn.] [¶] This is especially true because, here, plaintiffs' complaint includes a request for declaratory relief that 'defendants NORTH STAR and GENERAL STAR may not rely on the "own work" exclusion or the absence of the Broad Form Property Damage Endorsement in denying their obligations to defend and indemnify plaintiffs in the [underlying] actions, or in reserving their rights thereto.' (See Complaint, ¶¶ 25-26.) In light of this allegation, GENERAL STAR's contentions that 'the action is solely one for reformation' and that 'an action for reformation is *not* a duty to defend case,' (Petitioners' Mem. at 20), are both irrelevant and incorrect."

■ In any event, it is undisputed that the March 24, 1987, letter contained the exclusionary language in question and was received by Goldberg, Pacific Scene's attorney. The only reasonable inference to be drawn from these undisputed facts is that the exclusion in question was " '*called to* [Pacific Scene's] *attention, clearly and plainly.*' " (*Underwriters Ins. Co.* v. *Purdie, supra,* 145 Cal.App.3d 57, 65, quoting *Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 995 [116 Cal.Rptr. 528], original italics.)

The record in this case shows Pacific Scene's action seeking reformation is barred by passage of the three-year limitations period, and summary judgment properly should be granted. (*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1155; and see *Scott* v. *Farrar* (1983) 139 Cal.App.3d 462, 466 [188 Cal.Rptr. 823].)

### DISPOSITION

Petition granted. The superior court is directed to vacate its order denying North Star's motion for summary judgment and to enter a new and different order granting the motion.

Work, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied December 15, 1992, and the petition of real parties in interest for review by the Supreme Court was denied February 17, 1993.