[Civ. No. 17738. First Dist., Div. One. July 1, 1958.]

CLIFTON E. BROOKS, Respondent, v. EUNICE N. VAN WINKLE, as Administratrix, etc., Appellant.

Herron & Winn for Appellant.

Breed, Robinson & Stewart and Brooks & Winter for Respondent.

PETERS, P. J.—Plaintiff, Clifton Brooks, brought this action against the administratrix of the estate of Walter S. Van Winkle to recover the reasonable value of legal services rendered by Brooks to Van Winkle between January 1, 1949, and August 3, 1952. The complaint alleged that the reasonable value of such services was $16,074.54, of which $1,400 had

been paid. The trial court entered its judgment in favor of Brooks in the amount of $14,674.54. From that judgment the administratrix appeals.

The evidence supports the finding that the services rendered were reasonably worth at least the amount of the award. The plaintiff and his expert so testified, and there was no conflicting testimony. Defendant's major contention on this appeal, which is the same argument made on the trial, is that there is a fatal variance between the pleading and the proof. It is argued that respondent pleaded a cause of action on a *quantum meruit* and proved an express contract, and that in such a case recovery cannot be had. At the close of plaintiff's case defendant moved for a nonsuit on this ground, and, when this was denied, immediately rested without the production of any evidence.

The complaint does allege a cause of action based on an implied contract. It alleges that Van Winkle died August 3, 1952; that between January 1, 1949, and August 3, 1952, the plaintiff, at the request of Van Winkle, performed services for Van Winkle by incorporating four corporations, by representing Van Winkle and another corporation in tax deficiency proceedings and before the Public Utilities Commission in rate proceedings, by representing Van Winkle in proceedings before the Corporation Commissioner, and by advising Van Winkle in reference to his business. Such services are alleged to be reasonably worth $16,074.54, on which $1,400 has been paid.

The evidence, while indicating that the relationship between the parties started with an express agreement, also shows that subsequently a different superseding arrangement was entered into for additional services without any agreement as to compensation. Thus, the finding that Van Winkle agreed to pay the reasonable value of these services is substantially supported.

It appears that in the early part of 1948 one Cowles was assisting Van Winkle with certain insurance and estate planning problems. Cowles needed legal assistance in connection with some of these problems. He employed the plaintiff to advise him and Van Winkle on these matters. Van Winkle was apparently satisfied with plaintiff's assistance because, later in 1948, he asked Cowles to have plaintiff get in touch with him. This was arranged, and several months later Van Winkle told Cowles that he had retained plaintiff "to act as his attorney, and also told me that he got quite a good deal—

Mr. Brooks was going to handle his business for 25% of his savings on tax matters.''

Brooks, who has been an attorney since 1913, and who specializes in corporate and tax practice, testified that he was first hired by Cowles to advise him on Van Winkle's tax problems in January of 1949, and that in March of 1949 Van Winkle entered into a specific oral agreement with him in connection with these tax matters. Brooks testified that Van Winkle stated that he had had unpleasant experiences with attorneys; that he told Van Winkle he would be willing to work for what he could save Van Winkle on taxes; that Van Winkle stated that he supposed this meant for the total tax savings; that he, Brooks, replied that he ''would settle for 25% of the savings''; and that this was agreed upon.

At that time Van Winkle was operating some 10 bowling alleys and amusement centers. Brooks recommended that these enterprises be segregated into three groups, and that each group be separately incorporated. This would result in a substantial tax savings. Van Winkle and his wife were then in the 60 per cent tax bracket, and the type of incorporation recommended would reduce the corporate income to the 22 per cent tax bracket. Brooks carried through the recommended incorporations to completion, and, until Van Winkle's death, continued to render legal service to these corporations.

Plaintiff testified that this first agreement referred only to the tax problems of Van Winkle, but that some time later Van Winkle asked him to handle all of his legal affairs, except actual litigation, and that he agreed to do so. There was no discussion about compensation for these augmented services.

After the second agreement was entered into Brooks handled many non-tax matters for Van Winkle. He opposed a rate increase of the California Telephone and Water Company on behalf of one of the bowling alley corporations; on behalf of Van Winkle he incorporated the Clyde Water Company and applied for a rate increase for the company; he did considerable work in preparing for an application for an increased rate for another public utility corporation controlled by Van Winkle; he assisted Van Winkle in preparing and presenting claims against the Navy for damages to his property growing out of the Port Chicago explosion; he handled a deficiency assessment against the Delta Foods Company in which Van Winkle was a partner; and he incorporated a building construction corporation for his client. In addition he rendered

legal services in connection with the preparation of a net worth statement for his client that had been demanded by the Internal Revenue Bureau. Such a demand indicated a possible claim of fraud against the taxpayer. With the assistance of an accountant he negotiated a deficiency assessment of $32,000 with no penalties. Plaintiff also testified that, during the 3½ years he handled the legal work for Van Winkle, he had about 150 conferences with his client. He spent a total of 1,064½ hours on work for this client. He appraised the total value of his services at about $25,000. He testified that he received $1,400 on account of his fee. In the fall of 1951 Van Winkle stated that he intended to pay plaintiff a regular retainer from the public utility organized by plaintiff after the first of the year, but later postponed the date, stating that the corporation was not yet ready for this. The retainer was never paid. On several occasions the parties discussed paying plaintiff $250 a quarter as an advance on the fee, but nothing ever came of this. Plaintiff did not submit a bill for his services, because under the provisions of the Internal Revenue Code he figured that there would be a material savings to his client if he spread his services out over a three-year period.

An expert tax lawyer testified that the reasonable value of the services rendered by plaintiff was somewhere between $20,000 and $25,000.

On this evidence the trial court made the following basic three findings:

"That during the month of January, 1949, decedent, Walter S. Van Winkle, did retain and employ plaintiff as an attorney at law for the purpose of advising upon and performing legal services in connection with the achieving of an over-all income tax reduction for Walter S. Van Winkle and Eunice Van Winkle, his wife. That all of the properties and businesses involved in said retainer and employment were community property of the aforesaid Walter S. Van Winkle and Eunice N. Van Winkle, and said contract was made by Walter S. Van Winkle as husband pursuant to his power of control and management of community property. That it was the agreement between plaintiff and decedent Walter S. Van Winkle that the compensation of plaintiff for the services as aforesaid should be based upon twenty-five per cent of tax savings. That no more detailed method of computation of tax savings and no time during which such tax savings should be computed was agreed upon or discussed by plaintiff and decedent Walter S. Van Winkle.

"That thereafter decedent Walter S. Van Winkle did retain and employ plaintiff as his attorney to perform all other legal services required in connection with the business affairs of Walter S. Van Winkle and his wife, excepting only litigation. That no basis for compensation of plaintiff for services rendered or to be rendered under the employment described in this paragraph was agreed upon between plaintiff and Walter S. Van Winkle.

"That prior to the death of Walter S. Van Winkle plaintiff did perform various legal services under and pursuant to the two contracts of employment hereinabove described. That the reasonable value of said services is the sum of $16,074.54.''

The court concluded that plaintiff was entitled to a judgment for $14,674.54, that amount being the $16,074.54 less the $1,400 already paid.

█ Appellant makes several arguments in support of the contention that the judgment is erroneous. Basically, these arguments are all addressed to the problem of whether there is substantial evidence to support the findings. In contending that the evidence is insufficient, appellant's basic argument is that the proof established an oral express contract to employ respondent to do certain work and to pay him 25 per cent of the taxes saved, while the complaint alleged an implied contract to pay the reasonable value of the services. Thus, so it is asserted, there was a fatal variance. In support of this assertion the case of *Roche* v. *Baldwin,* 135 Cal. 522 [65 P. 459, 67 P. 903], is cited. That is an unusual case. It involved an action by an assignee of an attorney for professional services rendered. In the trial court the plaintiff recovered a substantial verdict. On appeal Department Two of the court affirmed. The cause was then heard by the court in bank. Judge Van Dyke wrote the main opinion reversing the judgment, giving two reasons for the reversal. One was that an erroneous instruction had been given. The other was that there was a fatal variance between the pleading and proof, the complaint alleging a *quantum meruit* and the proof showing an express contract. But one of the other six justices agreed with Van Dyke on the variance point. Three concurred in the reversal solely on the ground that the challenged instruction was erroneous, and two dissented, coming to the conclusion that the opinion rendered in department affirming the judgment was correct. Judge Van Dyke did hold that, since the proof showed an express contract as to how compensation for the services was to be fixed, it could not be supported by a

complaint based on a *quantum meruit*. We have found no subsequent case since *Roche* v. *Baldwin* was written in 1902 that has followed the Van Dyke holding. It has been held that, where an attorney has been retained under an express contract as to his compensation, but is wrongfully discharged before completion of the services, he may recover on a *quantum meruit* for the reasonable value of his services. (*Oliver* v. *Campbell*, 43 Cal.2d 298 [273 P.2d 15].) Under these circumstances the opinion of Judge Van Dyke cannot be considered as a very persuasive authority.

But even if the Van Dyke opinion is sound, it would not be controlling in the instant case. That is so for several reasons. In the first place the court here found, and the evidence supports the finding, that there were two separate contracts of employment. The first contract was to handle certain tax matters for Van Winkle in return for 25 per cent of the tax savings. The second contract retained respondent to perform all legal services required by Van Winkle, except actual litigation. This included many services in no way related to Van Winkle's tax problems. Certainly, since no fee for these services was agreed upon it was necessarily implied that Van Winkle was to pay the reasonable value of these services. The second contract was much broader than the first. Thus, the findings to the effect that there was an implied contract to pay the reasonable value of these services is amply supported.

■ Appellant contends that if the first contract did not cover all of the services involved it was respondent's duty to call that fact to Van Winkle's attention, and, failing to do so, it must be inferred that the first contract was all inclusive, citing such cases as *Lavenson* v. *Wise*, 131 Cal. 369 [63 P. 622], and *Reynolds* v. *Sorosis Fruit Co.*, 133 Cal. 625 [66 P. 21]. Those cases undoubtedly stand for the proposition that, where an attorney has an express contract to perform a legal service for a fixed fee, he cannot charge extra for certain services fairly included in the written contract. The cases also support the contention that, if the written contract is ambiguous in this respect, the ambiguity should be interpreted against the lawyer. But these rules are not here applicable. In the instant case the attorney is not seeking to change the terms of a contract after he discovered that he has made a bad bargain. Here an express contract for a limited and specified service was entered into. Then the client requested, and the lawyer agreed, to greatly broaden the services to be rendered. There is nothing ambiguous in the subsequent employment

extending the field of operation to non-tax matters. Certainly, it is a reasonable, if not almost inevitable, inference that, since nothing was said about compensation for these extended services, the parties intended that the fees would be fixed in accordance with the usual rule, that is, the reasonable value of the services. The situation is analogous to one where a contractor agrees to build a shed for a fixed price. Later the parties agree that a house will be constructed. There is no express agreement as to the fee to be paid for these services. Certainly it cannot reasonably be implied that the contractor or the owner intended that the extended job should not be paid for. At any rate, the inference drawn by the trial court was that the parties intended to pay the reasonable value of the extended services. That is a reasonable inference from the evidence produced.

There is a second factor to be considered. The first contract was to pay to respondent 25 per cent of the tax savings. Such an agreement is highly uncertain. It does not provide for the manner in which "savings" are to be computed, nor does it provide for how long a period the 25 per cent was to be collected. If suit were brought on the 25 per cent agreement it would be very difficult, if not practically impossible, to determine these matters with any reasonable degree of accuracy. Under such circumstances it is a reasonable inference that when the parties agreed to extend and change the nature of the work they also impliedly agreed to change the method of computing the fee. Thus, the findings on this issue are amply supported.

Appellant's second main contention is that respondent's claim is barred by the statute of limitations. Section 339, subdivision 1, of the Code of Civil Procedure, provides for a two-year period of limitation for most actions based on contracts not in writing. The present action was commenced April 24, 1953. The appellant claims that many of the services rendered were completed more than two years prior to that date, and that recovery for them is barred.

The trial court, in this connection, found:

"That except for the Delta Foods Co. tax deficiency matter, more particularly described in Allegation II of the complaint, all of the services rendered by plaintiff for the purpose of achieving tax savings pursuant to the retainer and employment between plaintiff and Walter S. Van Winkle during the month of January 1, 1949, were of a continuing nature, and none of said matters had been completed within two years of

the date of the death of decedent, Walter S. Van Winkle, as above set forth."

Based on this finding the court concluded that no part of the cause of action was barred.

As to the dates involved herein, the complaint alleges that the services were rendered between January 1, 1949, and August 3, 1952. That last date is when Van Winkle died. Letters of administration were issued to appellant on August 25, 1952. The complaint was filed April 24, 1953.

Section 353 of the Code of Civil Procedure provides, in part:

"If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his representatives, after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

Thus, under this section the statute of limitations does not apply to any claim accruing after August of 1950. It was the burden of appellant to prove that the services sued for were rendered prior to that date. This she did not do. In view of the finding of the court, a finding amply supported, and the failure of proof, the statute of limitations clearly did not run as to any item except possibly the $2,500 item found in the bill of particulars for organizing and incorporating the three bowling alley corporations.

The bill of particulars lists the various services performed by respondent, gives the date such services were rendered, and places a value on such services. Nothing is said in the bill of particulars about when the amounts listed were payable. Thus, in reference to the three bowling alley corporations the bill of particulars states:

"To professional services in connection with the incorporation and organization of Monterey Bowl, Sacramento Bowl, and Berkeley Bowl performed in period of January 20, 1949, to April 3, 1950—$2500.00."

If the $2,500 was payable on April 3, 1950, the claim for such services would be barred by the statute of limitations. But that is not the reasonable interpretation of the evidence. Obviously, the actual work in connection with the incorporation was completed on April 3, 1950. But the incorporation was simply a means to an end, not an end in itself. The end desired by both parties was to secure a tax savings for the client. The incorporation was not severable from that basic

purpose. It is a reasonable interpretation of the evidence that respondent was to be paid the reasonable value of the incorporation—the sum of $2,500—but that such sum was not payable until tax savings resulted. That would be well within the two-year period, or at least appellant has not proved that it was not. The services rendered in connection with incorporation were part and parcel of a continuous service rendered in connection with trying to secure a tax savings for the client. They were part and parcel of a general program aimed at achieving a tax savings. These services were continuous in nature. They continued right up to the death of Van Winkle.

Of course, normally, the due date of payment for services rendered is the date such particular service was completed, but that rule is not always applicable. It is well settled that, if the services are continuous in nature, and the court found in the instant case that the services were of that nature and such finding is supported, the due date becomes the date of the total termination of the services. ■ This well-settled rule, supported by many authorities, stated as follows in 6 California Jurisprudence 2d page 404, section 201, is applicable:

"Where the attorney represents his client under a general retainer, but in distinct matters, his right of action accrues upon the performance and completion of each such matter, in the absence of any contractual provision as to time or amount of payment. A different rule applies, however, to services which are intended to be continuous. It would seem that in such a situation, the attorney's cause of action does not accrue until the services are completed, or until completion is prevented by an event beyond his control." (See particularly *Mitchell* v. *Towne*, 31 Cal.App.2d 259 [87 P.2d 908].)

The judgment appealed from is affirmed.

Wood (Fred B.), J., and Dooling, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.