[No. D008049. Fourth Dist., Div. One. May 24, 1989.]

STEVEN D. ISRAELSKY et al., Plaintiffs and Appellants, v. TITLE INSURANCE COMPANY OF MINNESOTA et al., Defendants and Respondents.

**COUNSEL**

Jenkins & Perry, David R. Clark, Cynthia K. Thornton and Cynthia M. Fain for Plaintiffs and Appellants.

Seltzer, Caplan, Wilkins & McMahon, Reg A. Vitek, Donald A. English, Sternberg, Eggers, Kidder & Fox, James R. Sternberg and Scott I. Richards for Defendants and Respondents.

**OPINION**

**BENKE, J.—**

### SUMMARY

*Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378, 389 [76 Cal.Rptr. 594] (*Oil Base*) holds the statute of limitations on a claim against a *liability* insurer for breach of its duty to defend commences when a final judgment in underlying litigation against the insured is entered. In *Central Bank* v. *Transamerica Title Ins. Co.* (1978) 85 Cal.App.3d 859, 865-866 [149 Cal.Rptr. 822] (*Central Bank*), another district of the Court of Appeal held the statute of limitations on a claim against a *title insurer* for breach of its duty to defend commences to run when a tender of defense has been denied and the policyholder incurs attorney fees defending his or her title. *Central Bank* is the only authority in California which addresses the failure to defend under a title policy.

In this case, appellants, the Israelskys, have made a claim for breach of a duty to defend which arises under their title insurance policy. Under the holding in *Central Bank* that claim is time-barred as a matter of law. The trial court felt itself bound by *Central Bank* and thus dismissed appellants' claim.

■ We, of course, are not bound by *Central Bank*. (See *Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 101 [114 Cal.Rptr. 834].) More importantly we are not persuaded by its reasoning. Rather, we believe the rationale set forth in *Oil Base* is more compelling and we find no reason to exempt title policies from its holding. Accordingly, for the reasons we discuss below, we reverse.

## FACTUAL SUMMARY

The record discloses the following undisputed facts: In December 1982 plaintiffs Steven D. Israelsky and Kimberly Israelsky (Israelskys) agreed to purchase a home from J. Robert Schumsky and Sandra W. Schumsky (Schumskys). Prior to the sale, the Schumskys owned both the lot where the home was located and a second adjoining lot. While the sale was in escrow, the Schumskys and the Israelskys discovered that a fence, which they had believed was the western boundary of the residential lot, actually enclosed a substantial portion of the second lot. They also discovered they could not adjust the boundary between the lots to reflect their previous understanding before the scheduled close of escrow.

In lieu of a boundary adjustment, the Israelskys and the Schumskys amended their escrow instructions to provide for a sale of both lots to the Israelskys. Under the terms of the agreement, the Schumskys were given the right to obtain a boundary adjustment which would divide the two lots along the fence line. If the Schumskys were successful, the Israelskys agreed to reconvey to them the remaining portion of the second lot. Significantly the terms of the amendment gave the Schumskys six months in which to obtain the boundary adjustment from local authorities.

At the close of escrow on March 1, 1983, the Israelskys received a title insurance policy from defendant Title Insurance Company of Minnesota (TIM). The policy was issued by TIM's agent, defendant California Coast Title Co. (Cal Coast).

On April 27, 1984, the Schumskys filed a complaint against the Israelskys in the San Diego County Superior Court. The complaint alleged, among other things, that the amendment to the escrow instructions did not properly reflect the Schumskys' agreement with the Israelskys. In particular the Schumskys alleged they had never agreed to the six-month limitation on their right to adjust the boundary and receive a reconveyance.

The Israelskys asked TIM to defend them against the claims made by the Schumskys. On May 31, 1984, TIM declined the Israelskys' tender of defense. In denying coverage of the Schumskys' claims, TIM relied upon,

among other provisions of its policy, an exception for defects in title "created, suffered, assumed or agreed to by the insured claimant."

On July 26, 1985, the Israelskys asked TIM to reconsider its earlier decision. On September 3, 1985, TIM advised the Israelskys' counsel the company would reevaluate its decision. TIM again rejected the Israelskys' request for a defense on November 1, 1985.

## PROCEEDINGS BELOW

On August 27, 1986, the Israelskys filed a complaint against TIM, one of TIM's employees, Cal Coast, and one of Cal Coast's employees. The Israelskys alleged TIM's refusal to provide a defense to the Schumskys' claims was improper and gave rise to claims for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, fraud, breach of fiduciary duty, violation of a statutory duty, negligence and malpractice. At the time the Israelskys' complaint was filed, the Schumsky action was still pending in superior court.[1]

TIM demurred to the Israelskys' complaint on the ground it was barred by Code of Civil Procedure[2] section 339, subdivision 1, which provides a two-year statute of limitations for claims based upon a title policy.[3] The demurrer was overruled because the face of the complaint did not disclose when the Israelskys first incurred attorney fees in defending the Schumskys' complaint nor the date upon which TIM declined the Israelskys' tender of defense.

Following discovery by the parties, the Israelskys stipulated they incurred attorney fees on May 20, 1984, and that TIM rejected their tender of defense on May 31, 1984. The defendants then moved for summary judgment, again arguing the Israelskys' complaint was barred by section 339, subdivision 1. The trial court granted the defendants' motion and a judgment dismissing the Israelskys' complaint was entered. The Israelskys filed a timely notice of appeal.

---

[1] On June 5, 1987, the Schumsky litigation was transferred to the municipal court.

[2] All statutory references are to the of Civil Procedure unless otherwise specified.

[3] Section 339, subdivision 1, provides: "Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, except as provided in Section 2725 of the Commercial Code or subdivision 2 of Section 337 of this code; or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contact, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."

## DISCUSSION

## I

The parties agree the Israelskys' claim for breach of the duty to defend is governed by section 339, subdivision 1. However, they disagree on when the period under section 339, subdivision 1, began to run. Relying on *Oil Base*, the Israelskys argue the statutory period did not begin until a final judgment in the Schumsky litigation was entered. Since at the time the instant complaint was filed no such judgment had been entered, they contend their claim was timely. Relying on *Central Bank* the defendants contend the period commenced in May 1984, when the Israelskys' request for a defense had been denied and they incurred attorney fees. In addition the defendants argue *Central Bank* governs the Israelskys' claims for fraud, negligence, conspiracy and violation of the Insurance Code are also governed by *Central Bank* because the defendants believe these claims arise out of TIM's failure to defend. Hence, the defendants contend each of the claims set forth in the Israelskys' August 1986 complaint must be dismissed as untimely.

We agree with the Israelskys.

### A. *The Duty to Defend Under Liability Policies*

In *Oil Base* the court found an insurer's duty to defend is continuing and may be assumed at any time prior to entry of a final judgment in an action on the claim. (*Oil Base, supra,* 271 Cal.App.2d at p. 389.) The court noted that where a defendant has breached a continuing contractual duty, the statute of limitations does not commence until the time for performance has passed. (*Ibid.*) " ' "In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action." ' " (*Ibid.*) Accordingly the court in *Oil Base* held the statute of limitations on claims for breach of the duty to defend under a liability policy does not begin to run until a final judgment in the underlying action has been entered. (*Ibid.*)

We believe the holding in *Oil Base* was proper. We note initially that it conforms with the holdings in other jurisdictions which have considered the issue. (See *Boyd Bros. Transp. Co., Inc.* v. *Fireman's Fund Ins.* (M.D.Ala. 1982) 540 F.Supp. 579, 582, affd. 729 F.2d 1467; *Kielb* v. *Couch* (1977) 149 N.J. Super. 522 [374 A.2d 79, 81]; *Colpan Realty Corp.* v. *Great Am. Ins. Co.* (1975) 83 Misc.2d 730 [373 N.Y.S.2d 802, 804] ["The breach was not

complete until final dismissal for until such event defendant could have assuaged plaintiff's grief, sealed the breach and redeemed its wrong by taking up the cudgels of the action"]; *Continental Casualty Co.* v. *Florida Power & Light Co.* (Fla.Dist.Ct.App. 1969) 222 So.2d 58, 59, cert. den. (Fla.) 229 So.2d 867; *Moffat* v. *Metropolitan Casualty Insurance Co. of New York* (M.D.Pa. 1964) 238 F.Supp. 165, 175-176; see also *Paul Holt Drilling, Inc.* v. *Liberty Mut. Ins. Co.* (10th Cir. 1981) 664 F.2d 252, 255-256;[4] *Ginn* v. *State Farm Mutual Automobile Insurance Co.* (5th Cir. 1969) 417 F.2d 119, 122; *Gilbert* v. *American Casualty Co. of Reading, Pa.* (Fla.Dist.Ct.App. 1969) 219 So.2d 84, 86, cert. den. (Fla.) 225 So.2d 920.)[5]

Moreover, the principles relied upon in *Oil Base* are well established. The continuing nature of the duty to defend is not subject to serious question. (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618, fn. 11 [222 Cal.Rptr. 276]; *Fireman's Fund Ins. Co.* v. *Chasson* (1962) 207 Cal.App.2d 801, 807 [24 Cal.Rptr. 726]; *Firco, Inc.* v. *Fireman's Fund Ins. Co.* (1959) 173 Cal.App.2d 524, 528 [343 P.2d 311]; *Tibbs* v. *Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, 1375-1376; *Paul Holt Drilling, Inc.* v. *Liberty Mut. Ins. Co., supra,* 664 F.2d 252, 255-256; *Coblentz* v. *American Surety Company of New York* (5th Cir. 1969) 416 F.2d 1059, 1062.) Nor is the rule which gives the plaintiff, in cases where a continuing duty has been breached, the option of filing suit when the time

---

[4] In *Paul Holt Drilling, Inc.* v. *Liberty Mutual Ins. Co., supra,* 664 F.2d at pages 255-256, the court agreed the duty to defend was continuing. Nonetheless the court refused to allow the plaintiff to recover all of its expenses. Rather, relying on Oklahoma cases, the court held that a new cause of action arose each day the breach continued and the statute of limitations began to run on each such claim each day. Accordingly the court limited the plaintiff's recovery to the damages it incurred within the statutory period. (*Id.* at p. 256.) We have some doubt as to whether this approach is available under California law. Admittedly contracts which involve installment payments have been treated in a similar fashion by our courts. (See *Conway* v. *Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 200 [164 Cal.Rptr. 585]; *Lee* v. *DeForest* (1937) 22 Cal.App.2d 351, 360 [71 P.2d 285].) However, they have done so on the theory the time and amount of each payment are fixed by the contract. (See *Lee* v. *DeForest, supra,* 22 Cal.App.2d at p. 360.) Because, given the nature of civil litigation, neither the time nor amount of defense costs are subject to accurate prognostication, we question whether an analogy to installment contracts is appropriate. However because the defendants did not ask the trial court for partial relief on an installment theory, we do not have occasion to resolve this issue on the plaintiffs' appeal from the judgment dismissing their complaint.

[5] In *Ginn* v. *State Farm Mutual Automobile Insurance Co., supra,* 417 F.2d at page 122, and *Gilbert* v. *American Casualty Co., supra,* 219 So.2d at page 86, the courts relied upon "no action" clauses in the disputed insurance contracts. The clauses prevented the insureds from bringing any action against the insurers until a final judgment in the underlying proceeding had been entered. The *Ginn* and *Gilbert* courts held that the clauses apply to claims for breach of the duty to defend and extend the time for commencement of the statute of limitations to entry of a final judgment against the insured. On the other hand in both *Central Bank,* 85 Cal.App.3d at pages 868-869, and *Paul Holt Drilling, Inc.* v. *Liberty Mut. Ins. Co., supra,* 664 F.2d at page 254, the courts held that a "no action" clause does not apply to claims for breach of the duty of defend. Because we accept the holding in *Oil Base,* we do not reach this issue.

for complete performance has passed. (*Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 745-746 [47 P.2d 273]; *Richter* v. *Union Land etc. Co.* (1900) 129 Cal. 367, 375 [62 P. 39]; *Worthington* v. *Kaiser Foundation Health Plan, Inc.* (1970) 8 Cal.App.3d 435, 442 [87 Cal.Rptr. 272]; *Lubin* v. *Lubin* (1956) 144 Cal.App.2d 781, 791 [302 P.2d 49]; *McGrath* v. *County of Butte* (1939) 30 Cal.App.2d 734, 736-739 [87 P.2d 381]; *Coulter* v. *Sausalito Bay Water Co.* (1932) 122 Cal.App. 480, 490 [10 P.2d 780]; *Ross* v. *Tabor* (1921) 53 Cal.App. 605, 612-615 [200 P. 971].) ▮ "Where the defendant, obligated to perform over a period of time, is guilty of a material breach, the plaintiff may waive it and stand on the contract until the time for final performance. Such a waiver should not prejudice him, i.e., the statute ought not to begin running until the date when the last performance is due. (See 63 Harv. L. Rev. 1209.)" (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 378, p. 406.)

We note that in *Ross* v. *Tabor, supra,* 53 Cal.App. 605, the court applied the rule of delayed commencement in a dispute between a rancher and a beekeeper. The beekeeper had agreed to take care of the rancher's beehives for three years but abandoned the contract two months after taking charge of the bees. The court held the rancher's cause of action for breach of contract "accrued on the expiration of the time provided by the contract within which respondent was to make the additional colonies of bees, i.e., on the expiration of the three-year term of the contract." (*Id.* at p. 615.) The rule of delayed commencement has been applied in the context of a beet farming contract (*Union Sugar Co.* v. *Hollister Estate Co., supra,* 3 Cal.2d at pp. 745-746), water delivery contracts (*Richter* v. *Union Land etc. Co., supra,* 129 Cal. 367, 375; *Coulter* v. *Sausalito Bay Water Co., supra,* 122 Cal.App. at p. 490), a commercial lease (*Worthington* v. *Kaiser Foundation Health Plan, Inc., supra,* 8 Cal.App.3d at p. 442), an agreement to pay life insurance premiums (*Lubin* v. *Lubin, supra,* 144 Cal.App.2d at p. 791), and the promise to levy taxes (*McGrath* v. *County of Butte, supra,* 30 Cal.App.2d at pp. 736-739). Although the period between the initial breach by the respective defendants and the time for performance in these cases ranged from a few days (*Worthington* v. *Kaiser Foundation Health Plan, Inc.*) to 17 years (*Lubin* v. *Lubin*), in each case the statute of limitations did not commence until the time for complete performance had passed.

The rule of delayed commencement is based largely on considerations of fairness to the nonbreaching party. As the court in *Ross* v. *Tabor, supra,* 53 Cal.App. 605, explained: " 'The man who wrongfully renounces a contract into which he had deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has

injured; and it seems reasonable to allow an option to the injured party, either to sue immediately or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, *which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer.*' " (*Id.* at p. 614, italics added.)

The rationale which supports the rule of delayed commencement in other contexts applies with equal vigor to claims for breach of the duty to defend. When a defense is erroneously denied insureds face substantial and unexpected expenses. As the court in *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 278 [54 Cal.Rptr. 104, 419 P.2d 168], noted: "In purchasing his insurance the insured would reasonably expect that he would stand a better chance of vindication if supported by the resources and expertise of his insurer than if compelled to handle and finance the presentation of his case. He would, moreover, expect to be able to avoid the time, uncertainty and capital outlay in finding and retaining an attorney of his own." Thus the unexpected burden of defending an action may itself make it impractical to immediately bear the additional cost and hardship of prosecuting a collateral action against an insurer. An insured placed in this situation by the erroneous decision of his insurer should have the same option which the law has given the owners of beehives and beet farms. Like a rancher or farmer, the disappointed policyholder may find it advantageous, if not necessary, to wait until the time for complete performance has passed before prosecuting an action on his or her contract.[6]

---

[6] Although not apparent in the record before us, the need to wait may be particularly acute in instances where the insurer's denial of coverage is related to the outcome of issues being litigated in the underlying proceeding. (See e.g. *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 370-372 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]; *Executive Aviation, Inc.* v. *National Ins. Underwriters* (1971) 16 Cal.App.3d 799, 809-811 [94 Cal.Rptr. 347]; *General of America Ins. Co.* v. *Lilly* (1968) 258 Cal.App.2d 465, 470-472 [65 Cal.Rptr. 750].) In such cases, where concededly there is the potential for coverage, the insurers' duty to defend is unambiguously mandated by *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pages 276-278. Indeed, where resolution of the underlying claim may impair the insured's claim to coverage, the insurer may be required to bear the costs of counsel chosen and controlled by the insured. (Civ. Code, § 2860, subds. (a), (b); *United States Fidelity & Guaranty Co.* v. *Superior Court* (1988) 204 Cal.App.3d 1513, 1522-1524 [252 Cal.Rptr. 320]; *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra,* 162 Cal.App.3d 358, 370-372.) The insurer who nonetheless denies a defense in such a case places its insured in a very difficult position. The insured is burdened with the unexpected cost of a defense which must defeat or diminish the underlying claim without prejudice to insurance coverage. In that context a simultaneous attempt to establish coverage by way of an immediate action against the insurer might require the insured to risk success on the merits of the underlying claim in order to preserve its right to recover its defense costs. In addition to burdening the insured, such a result would seem to conflict with the rule which requires that an insurer's declaratory relief action be stayed where coverage is dependent upon the outcome of prior underlying litigation against its insured. (See *General of America Ins. Co.* v. *Lilly, supra,* 258 Cal.App.2d at pp. 470-472.)

## B. *Title Policies*

■ There is nothing in the nature of title insurance or the *Central Bank* opinion which supports departure from the rule of delayed commencement set forth in *Oil Base.* ■ The duty to defend under a title insurance policy is governed by the same principles which define the duty to defend under general liability policies. (See *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 570-571 [83 Cal.Rptr. 394, 463 P.2d 746]; *Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658, 664-665 [172 Cal.Rptr. 248, 18 A.L.R.4th 1301]; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 942-945 [122 Cal.Rptr. 470]; *Kapelus* v. *United Title Guaranty Co.* (1971) 15 Cal.App.3d 648, 653 [93 Cal.Rptr. 278].) "[I]n determining the bounds of [a title insurer's] duty to seek judicial resolution of plaintiffs' title dispute we will look to the case law regarding an insured's duty to defend." (*Jarchow* v. *Transamerica Title Ins. Co., supra,* 48 Cal.App.3d at p. 942.) Under both title policies and liability policies the duty to defend arises whenever there is a *potential* for indemnity by the insurer at the time the defense is requested.[7] (*Paramount Properties Co.* v. *Transamerica Title Ins. Co., supra,* 1 Cal.3d at p. 571; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 276-277.) The rationale which gave rise to this broad rule in the context of liability insurance has been accepted without alteration in title cases. "The rule regarding an insurer's duty to defend really can take no other form; otherwise the insured would be required to finance his own defense and then, only if he is successful, hold the insurer to its promise by means of a second suit for reimbursement. If this construction were followed, a basic reason for the purchase of insurance would be defeated: instead of having purchased insurance against the trauma and financial hardship of litigation, the insured will have found that he has purchased nothing more than a lawsuit." (*Jarchow* v. *Transamerica Title Ins. Co., supra,* 48 Cal.App.3d at pp. 942-943, citing *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 278.)

Because the duty to defend in a title policy arises out of the very same considerations which give rise to the duty in liability policies—protecting insureds from unexpected trauma and financial hardship[8]—any difference

---

[7] Because the defendants sought summary judgment on the grounds the claims are barred by the statute of limitations and they have raised no other issues of law in this court, we have not had occasion to determine whether the Schumskys' allegations about representations made by the Israelskys give rise to a potential for indemnity under a title policy. (See *Safeco Title Ins. Co.* v. *Moskopolous, supra,* 116 Cal.App.3d at pp. 665-666.)

[8] Indeed our Supreme Court has noted in another context the particular problems posed for landowners whose title has been attacked: "An adverse claim to property may of course constitute a substantial cloud on the title and may even render the title unmarketable. Because the maintenance of a quiet title action may involve litigation of considerable duration, an owner who is attempting to sell land may be extremely vulnerable to harassment by persons

in the treatment accorded title insurance claims and liability insurance claims cannot be based upon any inherent difference in the nature of the two obligations. ■ Nor is a shorter commencement point mandated by the particular terms of section 339, subdivision 1.

This brings us to the *Central Bank* opinion. As here, the plaintiff in *Central Bank* filed a complaint in which it alleged, among other claims, that the defendant title insurer had breached its duty to defend. (85 Cal.App.3d at pp. 863-864, fn. 1.) The court held the plaintiff's claims accrued, and the period under section 339, subdivision 1, commenced, when the plaintiff incurred attorney fees defending its title. (*Id.* at p. 866.) The court rejected the plaintiff's argument that its claims against the insurer did not arise until entry of a final judgment in the action which threatened plaintiff's title. (*Ibid.*) Rather the court adopted rules developed in attorney malpractice cases when they were governed by section 339, subdivision 1.

The court noted that in malpractice cases an action against an attorney accrues upon discovery of the wrongful act and occurrence of appreciable harm. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 194 [98 Cal.Rptr. 837, 491 P.2d 421]; *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 201 [98 Cal.Rptr. 849, 491 P.2d 433]; see also *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; § 340.6.) In adopting these rules for title cases, the *Central Bank* court stated: "An action for professional malpractice is covered by the first part of subdivision 1 of section 339 which does not specifically provide that a cause of action does not accrue until discovery of the loss or damage, while appellants' action upon a policy of title insurance is covered by the second part of subdivision 1 of section 339 which specifically provides that a cause of action accrues only upon discovery of the loss or damage. However, as noted above by judicial declaration a cause of action for professional malpractice accrues upon discovery of the harm or damage. There would appear to be no reason for not applying the judicially declared principles to the statutory principles, since both concern the concept of 'discovery.' Accordingly, appellants' causes of action under the policy issued by respondent accrued when appellants suffered appreciable harm, not when appellants had discovered the full extent of their loss." (85 Cal.App.3d at pp. 865-866.)

In light of the plain language of section 339, subdivision 1, we cannot fault the *Central Bank* opinion for concluding claims against title insurers *accrue* upon discovery of loss or damage. However, having determined

---

fraudulently purporting to hold adverse claims." (*Paramount Properties Co.* v. *Transamerica Title Ins. Co., supra,* 1 Cal.3d at p. 567, fn. 4.)

when such claims accrue, the *Central Bank* opinion goes no further. Thus the *Central Bank* opinion does not consider the question posed squarely by the Israelskys: their claims against TIM having accrued, may they nonetheless wait until the company's continuing obligation has ceased before bringing suit?[9] Contrary to the defendants' argument, we find nothing in the history or terms of section 339, subdivision 1, which suggests title policyholders cannot avail themselves of the same option the law affords insureds under liability policies.

We note the discovery rule discussed in *Central Bank* originated as a means of preserving negligence claims. As the court in *Neel* v. *Magana, Olney, Levy, Cathcart, & Gelfand, supra,* 6 Cal.3d at pages 183-184, itself explained: "The issue of delayed accrual of the limitations period under section 339 first arose in *Lattin* v. *Gillette* (1892) 95 Cal. 317 [30 P. 545], which involved negligence by a non-attorney title searcher. The court held that the action accrued at the time of the *negligent act*; it specifically rejected contentions that accrual should be deferred until damage occurred or until the client ascertained the error in the title report. The opinion in *Lattin* facilely ignores the practical consequence—that a title report which cannot be relied upon two years after its issuance is practically valueless. (See *J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.* (1956) 146 Cal.App.2d 831, 839 [304 P.2d 832].) In 1913 the Legislature amended section 339 to provide expressly that an action founded upon an abstract of title shall not be deemed to accrue until the discovery of the loss or damage, thereby effectively overruling *Lattin* v. *Gillette.*" (Italics added.)

Given its history as a device designed to preserve negligence claims, we cannot accept the defendants' argument the discovery rule was intended to entirely supplant the distinct rule which applies when a plaintiff has alleged breach of a continuing contractual obligation. The practical considerations which delay accural on negligence claims until discovery do not in any manner conflict with the equitable considerations which give rise to the rule of delayed commencement where a continuing obligation is alleged. One rule is designed to prevent tort claims from expiring before they are discovered (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at pp. 183-184); the other rule deals with the separate problem posed when a contract has been breached before complete performance is due. (See *Ross* v. *Tabor, supra,* 53 Cal.App. at p. 614.) We can see no reason, and none has been suggested, why title policyholders cannot have the benefit of both rules.

---

[9] This question, based upon TIM's continuing duty, is markedly different from the argument presented by the plaintiff in *Central Bank* . The plaintiff in *Central Bank* argued that its claims did not accrue until its damages were fixed by a judgment in the underlying proceeding. (*Central Bank, supra,* 85 Cal.App.3d. at p. 865.)

In this regard we note section 339, subdivision 1, has long been subject to a rule of delayed commencement for claims based upon continuing services. (See *Horacek* v. *Smith* (1948) 33 Cal.2d 186, 191-192 [199 P.2d 929] [action for payment for services rendered over 15 years not barred by § 339, subd. 1, where defendants promised to pay when "able" and evidence established ability arose 6 months before complaint filed]; *Brooks* v. *Van Winkle* (1958) 161 Cal.App.2d 734, 742-743 [327 P.2d 151] [attorney services continuing in nature therefore statute of limitation on claim for payment did not commence until services terminated]; *Fancher* v. *Brunger* (1949) 94 Cal.App.2d 727, 731-732 [211 P.2d 633] [action for value of services provided before death governed by § 339, subd. 1, but subject to rule of delayed commencement].)

Significantly attorney malpractice claims, which were formerly governed by section 339, subdivision 1, were also protected by a rule of delayed commencement.[10] Under section 339, subdivision 1, the statute of limitations did not commence while an attorney continued to owe the claimant a duty of care. (See *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 230 [74 Cal.Rptr. 225, 449 P.2d 161]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 189, fn. 26.)[11] Thus a complete examination of the malpractice cases discussed in *Central Bank* suggests no inconsistency between a discovery rule which governs accrual and a rule which delays commencement of the statute of limitations while an obligation is continuing.

Our unwillingness to follow the holding in *Central Bank* is buttressed by the fact the opinion does not discuss *Oil Base* which preceded it. In particular the *Central Bank* opinion offers no reason why the option which the law has given other plaintiffs who make a claim based on breach of a continuing obligation should not apply to title policies. As we have seen, that rule, when applied to the claims for breach of the duty to defend, has a great deal of merit.[12]

Accordingly, while claims on title policies accrue upon discovery of loss or harm, we hold the statute of limitation for claims for breach of the duty to defend does not commence until entry of a final judgment in the underlying litigation. Since the Israelskys' claim for breach of the duty to defend

[10] In 1977 the Legislature enacted section 340.6 which now governs attorney malpractice actions. (Stats. 1977, ch. 863, § 1, p. 2609.)

[11] Under section 340.6, subdivision (a)(2), the limitations period is tolled while the "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."

[12] We also note that the holding in *Central Bank* has not been followed in any published opinion.

was filed before termination of the Schumsky lawsuit, it was timely. In light of our holding we need not consider the defendants' argument the Israel-skys' remaining claims are also barred by *Central Bank.* Since we do not apply the holding in *Central Bank,* it will not defeat any of the Israelskys' claims.

The judgment dismissing the Israelskys' complaint is reversed. Appellants to recover their costs on appeal.

Work, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied June 20, 1989, and respondents' petition for review by the Supreme Court was denied August 10, 1989.