[No. G044354. Fourth Dist., Div. Three. Oct. 20, 2011.]

STATE COMPENSATION INSURANCE FUND, Plaintiff and Appellant, v.
WALLDESIGN INCORPORATED, Defendant and Respondent.

1526

**COUNSEL**

Judith Sapper, Jody DeBernardi and Linda Platisha for Plaintiff and Appellant.

Law Office of Greg L. Eriksen and Greg L. Eriksen for Defendant and Respondent.

## OPINION

## FYBEL, J.—

### INTRODUCTION

State Compensation Insurance Fund (the Fund) provided workers' compensation insurance to WallDesign Incorporated (WallDesign) under two insurance policies. WallDesign failed to pay the premium the Fund claimed was owing; the amount of the final premium was determined through an audit of WallDesign's records by the Fund. The Fund (through its collection agent) sued WallDesign to recover the unpaid premium. WallDesign demurred to the Fund's complaint; the trial court sustained the demurrer on the ground the complaint was not timely filed.

■ We reverse. The insurance policies were executory contracts. Under the terms of the insurance policies, we hold the statute of limitations on the Fund's cause of action for breach of contract to recover the unpaid premium did not accrue until the Fund demanded payment of the premium after completion of the audit. The complaint was filed within the four-year limitations period and was not time-barred. We publish our opinion in this case of first impression to make clear that where an insurance policy states that the insurer has three years after the end of the policy period to complete an audit of the insured's records in order to determine the final premium due, and the insurer completes that audit within the three-year period and timely submits a final bill to the insured, the statute of limitations begins to run on the date the final bill is sent.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Fund issued two workers' compensation insurance policies to WallDesign. Both policies provided coverage from January 1, 2003, to January 1, 2004, and both were cancelled on December 15, 2003, due to nonpayment of premiums.

Under the terms of the policies, WallDesign paid an estimated monthly premium based on its payroll for the previous month, multiplied by a set rate determined by the classifications of WallDesign's employees. Rates are different based on job classifications, which take into account the physical hazards of the industry, occupation, and type of employment. (Ins. Code, §§ 11820, 11821.)

The final premium due on the policies was determined by an audit of WallDesign's records relating to the policies. By the terms of the policies, the

audit was required to take place within three years after the end of the policy period. The final premium was calculated "by using the actual premium basis and the proper classifications, rates and rating plans that lawfully apply to the business and work covered by this policy."

As noted, the policy period ended on January 1, 2004. The audit of WallDesign's payroll records was conducted between June 2004 and August 2005, and a final bill, based on the results of the audit and the final reconciliation of WallDesign's account, was issued on October 25, 2005, in the amount of $1,045,905.35. Thus, the audit was completed and the final bill was presented well within three years after the end of the policy period. WallDesign failed to pay the final bill.

F.D. DeLeon & Associates, Inc. (DeLeon), as the assigned collection agency for the Fund, filed a complaint against WallDesign on October 6, 2009, within four years after the issuance of the final bill on October 25, 2005. DeLeon filed a first amended complaint on May 17, 2010, seeking $1,045,905.35 in damages for the unpaid workers' compensation premium. Causes of action for breach of contract and the common counts of services rendered and quantum meruit were alleged in the first amended complaint.[1]

---

[1] The first amended complaint purports to attach and incorporate by reference a "Terms of Insurance" letter dated December 21, 2002, and the two insurance policies. However, those documents were not attached to the first amended complaint. Having reviewed the trial court's records, we note that those documents are also not attached to the original complaint. DeLeon attached a copy of the Fund's standard workers' compensation insurance policy to its opposition to WallDesign's demurrer, but this is only a standard policy. No copies of the actual policies issued to WallDesign are part of the appellate record.

Our review of the trial court's records, however, reveals that the Terms of Insurance letter and both policies are attached as exhibits to the draft first amended complaint, which itself is attached to DeLeon's motion for leave to file an amended complaint. On our own motion, we augment the record on appeal with the following documents, both of which were filed in the case of *F.D. DeLeon & Associates, Inc. v. WallDesign Incorporated* (Super. Ct. Orange County, No. 30-2009-00309793): (1) complaint, filed October 6, 2009, and (2) notice of motion and motion for leave to file first amended complaint; declaration of Alan D. Wilner; and memorandum of points and authorities, filed April 12, 2010. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

We caution counsel that it is not the responsibility of this court to obtain the documents necessary to consider the parties' arguments on appeal. We have frequently used our discretionary authority under California Rules of Court, rule 8.155 to augment the appellate record with documents contained in the trial court record that were omitted by the parties, through mistake or neglect, in order to assist us in reviewing appeals on their merits. But we are by no means required to do so. A party desiring to refer us to the language of the insurance policy that is at the heart of the case is responsible for ensuring that a complete, accurate copy of that policy is in the appellate record. In the future, the failure to do so may result in a forfeiture of the party's arguments on appeal. "When practicing appellate law, there are at least three immutable rules: first, take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 [1 Cal.Rptr.3d 726]; see also

WallDesign demurred to the first amended complaint, arguing the applicable four-year statute of limitations for breach of a written contract—Code of Civil Procedure section 337—barred all the causes of action.

The trial court sustained the demurrer without leave to amend. An order of dismissal was filed on August 23, 2010, and DeLeon appealed. This court granted the Fund's motion to substitute in as plaintiff and appellant. Judgment was entered on August 23, 2011.[2] We will treat the notice of appeal as having been filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

## DISCUSSION

A judgment following the sustaining of a demurrer is reviewed de novo. (*Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 296–297 [120 Cal.Rptr.3d 442].) We treat the properly pleaded allegations of the first amended complaint as true, and liberally construe them to achieve substantial justice among the parties. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198].)

The parties agree that a four-year statute of limitations applies to the Fund's claim for breach of a written contract: "Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing . . . ." (Code Civ. Proc., § 337, subd. 1.) The issue here is when the statute began to run. WallDesign argues the statute began to run either when the policies were cancelled on December 15, 2003, due to WallDesign's failure to pay its premiums, or when the Fund completed its audit on August 23, 2005. Under either of those scenarios, the complaint filed October 6, 2009, would be untimely. The Fund argues the statute did not begin to run until October 25, 2005, when it sent WallDesign the final bill, making the complaint timely.

▮ The workers' compensation insurance policies were executory contracts. By definition, they could not be fully performed by either party until after their expiration. "An executed contract is one, the object of which is fully

*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1002–1003 [61 Cal.Rptr.3d 403]; *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498–499 [21 Cal.Rptr.3d 315].)

[2] We invited the parties to submit supplemental letter briefs addressing whether this court had jurisdiction over the appeal, due to the lack of a judgment or an order of dismissal signed by the trial court. (Code Civ. Proc., § 581d; *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573 [129 Cal.Rptr.3d 380].) The Fund responded by submitting a copy of a judgment signed by the trial court, as noted, on August 23, 2011. On our own motion, we augment the record on appeal with the judgment after demurrer, which was filed in the case of *F.D. DeLeon & Associates, Inc. v. WallDesign Incorporated, supra*, No. 30-2009-00309793, on August 23, 2011. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

performed. All others are executory." (Civ. Code, § 1661.) The statute of limitations on a cause of action for breach of an executory contract generally does not begin to run until the time for full performance has arrived. As our Supreme Court has explained, " '[t]he farming contract was an executory contract, continuing over the beet season of 1925, and could not be completed or fully performed by appellant until the end of that season, the date of which is established by evidence as the month of October, 1925. In such a contract, where the parties did not mutually abandon or rescind it upon a breach or successive breaches, the injured party could wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches. [Citation.] Respondent was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until it had made its election. [Citations.]' " (*Union Sugar Co. v. Hollister Estate Co.* (1935) 3 Cal.2d 740, 745–746 [47 P.2d 273].)

The Fund had a continuing duty to defend WallDesign for claims arising before the cancellation date. (See *Israelsky v. Title Ins. Co.* (1989) 212 Cal.App.3d 611, 617 [261 Cal.Rptr. 72], and cases cited therein.) The Fund had the right to wait until the time for final performance under the policies to commence its action against WallDesign. (*Id.* at pp. 617–619; *Ross v. Tabor* (1921) 53 Cal.App. 605, 612–615 [200 P. 971].)

The time for final performance under the policies was when the final audit had been performed within three years after the expiration date of the policies, and a final bill had been submitted to WallDesign. The policies read, in relevant part, as follows: "The premium shown on the Declarations, schedules and endorsements is an estimate. *The final premium will be determined after this policy ends* . . . ." (Italics added.) The policies further provide that the period within which the final premium would be calculated extends to three years after the end of the policy period: "We may conduct the audits [of WallDesign's records relating to the policy] during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium." An endorsement to the policies provides: "Your policy has been written on monthly adjustment period. You will pay all premium[s] when due. [¶] . . . [¶] Payment of outstanding premium[s] is due within 10 days (ten) from the bill date."

█ Neither the law nor the language of the policies supports WallDesign's arguments regarding the date on which the statute of limitations began to run on the Fund's breach of contract claim. WallDesign's failure to pay the premiums due in December 2003, before the end of the agreed-upon insurance period, did not start the statute of limitations on a claim for failure to pay the final premium, which by the terms of the policies might not have been fully calculated for three years.

Similarly, the statute of limitations did not begin to run immediately upon completion of the audit. The complaint alleges both the audit and the final bill were completed within the three-year contract period. Although the insurance policies do not specify a time within which the final bill must be provided to the insured, the Fund was permitted a reasonable time after completion of the audit to submit its final bill to WallDesign. On the allegations of the complaint, the two-month period between those two events is reasonable. Indeed, here, the Fund completed the audit and sent the final bill within less than two years after the end of the policy period.

Given our holding, we need not consider the parties' arguments regarding the statute of limitations on an open book account versus a cause of action for an account stated, nor do we need to consider the Fund's request for leave to amend.

### DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.